## PEOPLE *v.* RICE.

1. CRIMINAL LAW—INTENT—STATUTORY CONSTRUCTION.
  While intent is ordinarily an element of crime, the legislature may create offenses without reference to the offender's knowledge of the existence of the facts, but courts are slow to find a legislative intent to condemn a man for not knowing that which he cannot know.

2. INTOXICATING LIQUORS—PHYSICIANS—PRESCRIPTIONS.
  An information charging a physician with giving a prescription for whisky to an habitual drunkard in a county which has adopted prohibition, and alleging that he gave the prescription in bad faith, and that the liquor was procured for a beverage, charges no crime.　Act No. 207, Pub. Acts 1889; 2 Comp. Laws, § 5412; Act No. 107, Pub. Acts 1909.

3. SAME.

    Unless there is open or tacit collusion between the druggist and the physician, so that the actual sale is unlawful, the conduct of the physician is not illegal under Act No. 107, Pub. Acts 1909.

4. SAME—STATUTES—ACCESSORY.

    3 Comp. Laws, § 11930, abolishing the distinction between an accessory before the fact and a principal and making all persons aiding or abetting in the commission of the crime principals, has no application to such sale if the act of the druggist in selling the liquor was lawful.

5. SAME—INDICTMENT AND INFORMATION.

    Guilty knowledge of the druggist and collusion with the physician is immaterial under an information which fails to charge such guilty knowledge or conspiracy or collusion.

Exceptions before judgment from Genesee; Wisner, J. Submitted April 22, 1910. (Docket No. 141.) Decided June 6, 1910.

James B. Rice was convicted of violating the local-option law. Reversed, and respondent discharged.

*Brown, Farley & Selby*, for appellant.

*James S. Parker*, Prosecuting Attorney, and *Ed. S. Lee*, Assistant Prosecuting Attorney, for the people.

OSTRANDER, J. The information is in the following form:

" James S. Parker, prosecuting attorney for said county, for and in behalf of the people of the State of Michigan, comes into said court, in the December, A. D. 1909, term thereof, and gives it here to understand and be informed that James B. Rice, late of the city of Flint, in the county of Genesee, and State of Michigan, heretofore, to wit, on or about the 21st day of September, in the year 1909, at the city of Flint, in said Genesee county, being then and there a practicing physician, wrote, signed, and delivered to one James Scheuble, alias ' James Slolts,' a prescription in words and figures as follows:

"'Take this to the Buckrell Pharmacy, Bell Phone 562, 1100 N. Saginaw St., corner McFarlan, Flint, Michigan, Jas. Slolts, 9 / 21 / 9, Rx. 1 bot Shaws Malt Sig. as directed.

"'J. B. Rice, M. D.

"'(Canceled September 21, 1909.
    [Signed]                              "'J. BUCKRELL.)'

"Said prescription called for one bottle of Shaw's Malt on which was procured one quart of whisky and (said prescription was a prescription for one quart or bottle of whisky) by the said James Scheuble as hereinafter set forth, the said prescription being then and there obtained for the purpose of enabling the said James Scheuble to procure said intoxicating liquor. The said James B. Rice, M. D., not making and writing the said prescription upon an examination into the physical condition of said James Scheuble and not making the same in good faith and upon his personal knowledge that the physical condition of the person for whom such liquor was procured required the same for medical purposes, was not made upon and signed by the superintendent of any hospital or other medical institution where such liquors are used only for such medical or scientific purposes, and said James Scheuble then and there being a notorious, habitual, and common drunkard and obtaining the liquor for the purpose of drinking same as a beverage, and not for medicinal purposes, and said James B. Rice, M. D., not being then and there a druggist or registered pharmacist engaged in selling intoxicating liquors in compliance with the requirements and restrictions imposed upon druggists and registered pharmacists by the general laws of the State of Michigan, and contrary to the provisions of a certain resolution adopted by the board of supervisors of the county of Genesee, State of Michigan, on the 12th day of April, A. D. 1909, in pursuance of Act No. 207 of the Public Acts of the State of Michigan for the year A. D. 1889, as amended, contrary to the form of the statute in such case made and provided, and against the peace and dignity of the people of the State of Michigan."

Respondent refused to plead thereto. By various objections and exceptions counsel for respondent raised the point that the information charged respondent with no offense.

The theory according to which the court admitted cer-

tain testimony and submitted the question of respondent's, guilt to the jury is made manifest by the following excerpts from the charge:

"Now, the statute under which this information is filed is section 26 of Act No. 107 of the Public Acts of 1909, which provides:

" 'Every druggist keeping a drug store in any county adopting prohibition under this act shall by himself or his clerks be permitted to sell vinous, malt, brewed, fermented, spirituous and intoxicating liquors for medicinal purposes, but only on the written (not printed or typewritten) prescription of a regular practicing physician: *Provided*, That the physician making such prescription shall state therein the name of the person for whom such liquor is prescribed, the kind and quantity of liquor prescribed, and shall issue the same in good faith and upon personal knowledge that the physical condition of the person for whom such liquor is prescribed requires the same for medicinal purposes.   *   *   *   Such prescription shall be plainly written and dated and signed by the full name of the maker thereof.'

"Now, that is the measure of the duty of the physician, and the charge in this case is that he made a prescription to James Scheuble on the 21st day of last September, which did not comply with the requirements of that statute, that he issued that prescription contrary to the injunction laid upon him by that statute I have read to you.   *   *   *   There has been admitted into the case certain prescriptions for intoxicating liquors given by the respondent to other persons before and after the time charged in this case.   Now, if you first—and I emphasize the word 'first' and I repeat—now, if you first find that the respondent gave the prescription charged to Scheuble and intended it for him, then you may consider the other prescriptions, their number, and amount of liquor prescribed thereby, solely upon the question of whether the respondent acted in good faith and believed from personal knowledge that the physical condition of Mr. Scheuble required the kind and quantity of liquor prescribed, and you must consider the same for no other purpose whatever.   They cannot be used as having any bearing upon the question of whether the respondent gave the prescription to Scheuble, intended it for him, and must not be considered at all unless you first find the respondent did so give it to Scheuble as already stated.

"I read you section 11930, 3 Comp. Laws, upon which I base the instructions which I will next give you:

"'The distinction between an accessory before the fact, and a principal and between principals in the first and second degree in cases of felony is abrogated and all persons concerned in the commission of a felony' (and I charge you that the case upon trial is a felony) 'whether they directly commit the act constituting the offense or aid and abet in its commission though not present, may hereafter be indicted, tried and punished as principals as in the case of a misdemeanor.'

"Following that I give you this:

"'If you find that the respondent wrote the prescription in evidence for James Scheuble and delivered it to him, and that respondent did not issue the same in good faith and upon personal knowledge that the physical condition of said Scheuble not only required whisky, but also required the quantity which you find under the evidence was indicated by the prescription, and you further find that, by reason of the furnishing of said prescription to said Scheuble, Scheuble was enabled to procure a quart of whisky, then respondent would become a principal in the furnishing of said liquor, and it would be your duty to convict. If the prescription was written by respondent for Scheuble and intended for him and delivered to him, the fact that some other name was written therein will not excuse the making and delivery to him, and under such circumstances it would be the same as though Scheuble's name was written in the prescription itself.'"

Very early in the course of the trial the court said:

"Under that law they laid down in section 26 what the duty of the physician should be, that he should only issue a prescription under certain circumstances, and they did that, in my judgment, for the purpose of bringing the physician within the penalty of the law; they amended section 16, which originally provided for the punishment for the violation of section 1 and section 15, and they amended that section 16 so as to make it read that any one offending against any provision in the law should be punished so and so. Now, in my judgment, the legislature intended that physicians should pay some attention to that law, and, if a man goes into a physician's office and says to him, 'I want a prescription for some whisky,' and the physician does not make any examination of him, but immediately sits down and writes him a prescription that he may get whisky on, without personal knowledge of

whether his physical condition requires it, or without any effort whatsoever to determine whether his physical condition requires it, if that is a fact in such case, in my judgment the physician is amenable to the law. * * * That in my judgment is the object of the law, and I say that, if a physician does not take those precautions and receives money for the sale of his prescriptions, that is just the same as though he delivered the whisky; under the ordinary criminal law he became a principal and has made it possible for a man to get it unlawfully; and it is just the same, in my judgment, as the case I instanced. If I propose to a person to go down on the street and hit Mr. Lee, and he does it, it is my offense just the same as though I was there and hit Mr. Lee myself. I have made it possible for Mr. Lee to get hit; therefore, I am guilty of it myself, although I was not there at all. Now, for a violation of that section, in my judgment the physician is amenable as a principal in furnishing the liquor."

The reasonable interpretation of the language employed in the information is that respondent is charged with writing and delivering a prescription for liquor without an examination of the applicant, not upon personal knowledge that the condition of the applicant required liquor for medicine and not in good faith; that the applicant did procure liquor called for in the prescription by means of the prescription. It is also, inferentially, charged that the prescription is not in proper form because the signature to it is not the full name of the physician. It is said in the brief for the people that the information charges a specific violation of the law, and in the very words of the statute, in the allegation "that the said James B. Rice, M. D., not making and writing the said prescription upon an examination into the physical condition of said James Scheuble," etc., etc., and in negativing the provision of the statute, the doctor issuing such prescription " shall issue the same in good faith and upon personal knowledge," etc., etc. Again, it is said:

" Primarily, the specific offense charged in said information is the issuing of the prescription mentioned in the information, and the violations of the statute in other re-

spects were proved for the purpose of showing lack of good faith and an utter disregard of all the provisions of the act in the issuing of this particular prescription under the circumstances alleged in the information."

The brief, as we understand it, does not attempt to sustain the proposition that under this statute the respondent might be found guilty as a principal, or as an aider and abettor, of unlawfully selling, or unlawfully furnishing, liquor. There is no attempt made to sustain the proposition that the information charges the respondent with making, or with aiding and abetting, an unlawful sale of liquor. The theory of the people was and is that the act of a physician in writing and delivering—or issuing—a prescription in disregard of the provisions found in section 26 of the statute is a violation of the law, subjecting the physician to the penalties prescribed in section 16 of the act. According to this theory, it is immaterial whether liquor was procured upon the prescription. The physician would be equally culpable if the prescription was in proper form, and if the druggist sold liquor in reliance upon it, in perfect good faith. According to the theory of the instructions given to the jury, the prescription must have been filled, must have brought about a sale or furnishing of liquor. In other words, if the prescription in question had not been filled—if the jury had so found—the respondent must have been acquitted.

With respect to the question now being considered, namely, whether the information charges respondent with having committed an offense, it is immaterial that the two theories indicated are inconsistent. Whether the acts of the physician, described in the information, are obnoxious to the law, depends upon the proper construction of the law. The general purpose of the law is to prevent the manufacture of liquors and all traffic in liquors, as beverages, in certain counties. Druggists may traffic in liquors for medicinal or scientific purposes. The purposes for which liquors are desired must be certified to the druggist either by a regular practicing physician or by a

superintendent of a hospital, medical, or educational institution. He may not lawfully make sales of liquors except upon such certification. In a particular instance the druggist may know whether the certification is in proper form. If it is a prescription, it must be written, must name the person for whom the liquor is prescribed, the kind and quantity prescribed, must be dated, and signed with the full name of the physician. He cannot know that the prescription is issued in good faith, upon personal knowledge that the physical condition of the person prescribed for requires the liquor for medicinal purposes. He may come, in time, to believe, from the quantity of liquor prescribed and from the frequency with which the prescriptions of a particular physician are presented, that the prescriptions are not issued in good faith. He may know the reputation and character of the person prescribed for. But, manifestly, in case of a first or of a second or other prescription of moderate quantities of liquor for a stranger, he cannot know that the qualities of good faith and necessity exist.

Criminal intent is, ordinarily, an element of crime, and this is true although the offense is purely statutory. It is competent, however, for the legislature to make certain acts, coupled with certain facts, offenses, punishable by fine and imprisonment, without regard to the actor's actual knowledge of the existence of the facts. *People* v. *Worden Grocer Co.*, 118 Mich. 604 (77 N. W. 315); *People* v. *Snowberger*, 113 Mich. 86 (71 N. W. 497, 67 Am. St. Rep. 449); *People* v. *Roby*, 52 Mich. 577 (18 N. W. 365, 50 Am. Rep. 270); *People* v. *Curtis*, 129 Mich. 1 (87 N. W. 1040, 95 Am. St. Rep. 404). Such legislation is enacted and is sustained, for the most part, on grounds of necessity. Courts are, however, slow to find a legislative intention to condemn a man for not knowing that which he cannot know.

The reasonable construction of this statute is that it gives a privilege to druggists, which must be honestly exercised. If it is honestly exercised, in filling a prescrip-

tion which is in the statute form, he is protected. The fact that the prescription is in the statute form is not an absolute protection. Good faith is required, and the want of it may be shown by the number of sales made upon the prescriptions of a particular physician, by the quantity of liquor prescribed and furnished, by the frequency with which a particular person presents prescriptions to be filled, by the character and habits of the person to whom the liquor is furnished, and by any other facts and circumstances which tend to prove that the liquor was in fact procured to be used as a beverage, and that the druggist is fairly chargeable with notice of the fact. The lawfulness of the sale does not necessarily depend upon the good faith of the physician. It does depend upon the good faith of the druggist. The good faith of the physician may not always be a protection to the druggist because the druggist may know of facts and circumstances indicating clearly, to him, that the liquor called for will be used as a beverage. In short, there is no necessary connection, as affecting the good faith of either, between the conduct of the physician in prescribing, and the conduct of the druggist in selling, liquor. We do not find in the statute an intention to punish physicians for issuing prescriptions for liquor in bad faith. We mean by this that apt terms are not found to create a substantive offense, the elements of which are writing and delivering carelessly or dishonestly, prescriptions for liquor. If physicians are amenable to the pains and penalties of the act, it is because they have indirectly, but intentionally, brought about a sale of liquor to be used as a beverage. They do not, in issuing prescriptions in bad faith, occupy the position of merely practicing subterfuge or telling untruths in order to secure liquor. The law intends that sales may be made upon prescriptions. It intends that no sale shall be made otherwise than upon prescriptions. It has made the prescription, and therefore the physician, potential in securing liquor. In this way a physician becomes a party to every sale made upon his certificate. Nevertheless we are constrained to say that, unless there

is open or tacit collusion between the druggist and the physician, so that the actual sale is unlawful because, though made upon a certificate proper in form, it is made in bad faith, the law is not so written as to make the conduct of the physician unlawful. It is not so written that an intention can be found to make a particular sale lawful as to the druggist and unlawful as to the physician. And the doctrine and the statutes which make accessories before the fact and aiders and abettors principals can have no application if the ultimate act of selling is lawful.

In the case at bar the testimony on the part of the people tended to prove guilty knowledge on the part of both physician and druggist—tended to prove an unlawful sale of liquor participated in by both druggist and physician. The information, however, as has been pointed out, is not framed upon any such theory. It does not charge any druggist with guilty knowledge of the conduct of the physician, or that the sale of liquor was unlawful because made with such knowledge. It does not charge conspiracy or collusion. Indeed, it does not inform the respondent what druggist, if any, furnished the liquor. It is as well supported by proof that the liquor was procured of an individual as by proof that a druggist filled the prescription.

These conclusions require the conviction to be set aside and the respondent discharged.

It is so ordered.

HOOKER, MOORE, BLAIR, and STONE, JJ., concurred.