## PEOPLE v. BELL.

INTOXICATING LIQUORS—DRUGGISTS—PHYSICIANS AND SURGEONS—
 LOCAL OPTION
   Under the local-option law, 2 Comp. Laws, § 5412 *et seq.*, as
   amended by Act No. 261, Pub. Acts 1911, a physician in a
   county that has prohibited the sale of intoxicating liquors,
   who is not a licensed druggist and who keeps a place where
   intoxicating liquors are dispensed, sold, or furnished, violates
   the statute.

Exceptions before sentence from Ionia; Davis, J. Submitted June 13, 1912. (Docket No. 130.) Decided July 11, 1912.

Robert B. Bell was convicted of keeping a place where intoxicating liquors were sold or dispensed in violation of the local-option law.    Affirmed.

*Alfred R. Locke*, Prosecuting Attorney, for the people.

*James Scully* and *Elvert M. Davis*, for respondent.

MOORE, C. J.    The respondent is a practicing physician at Portland, Ionia county, Mich.    He was convicted of a violation of the local-option law, so called.    The case is here on exceptions before sentence.    The information covers the period from July 1, 1911, to November 1, 1911.    It was admitted that the local-option law was in force in Ionia county during this period of time, and that the respondent was not a druggist nor registered pharmacist, and had not filed a bond as such.

The people produced several witnesses.    We quote the testimony of one of them to show the manner in which respondent did business:

" I have lived in Portland about 25 or 30 years.    I am a common laborer.    I have known Dr. Bell about a year. His place of business is on Kent street.    He is a doctor. I never purchased any liquor there only for medicinal purposes.    I came home from the country.    I had been at work in the country.    My wife was sick and I wanted some liquor, and got it.    I think it was in the month of October.    I got a pint, and he charged me a half a dollar.    I asked him for whisky for medicinal purposes.    I told him it was for my wife.    I took the whisky home. My wife drank it.    Probably a couple of weeks after that I got another pint of whisky for medicinal purposes.    I told him my wife wanted the liquor.    He had looked my wife over before that, last fall.    It must have been a month before this.    The trouble with my wife was change of life."

Cross-examination by Mr. Scully:

" I lived here 25 or 30 years.    I worked here in town and in the country.    I have known the doctor about a year.    He has treated me and doctored my family some.

He was called to my place last fall to examine my wife, and made a personal examination of her condition. This liquor I wanted for my wife and told the doctor so. He came to see her about a month before I got the liquor, that is what I understood. I told him I wanted some liquor for my wife for medical purposes; that she was not well. My wife was nervous and all unstrung, and had the usual troubles a woman has during the change of life. She used the liquor herself."

It was shown by a member of a wholesale liquor house that there was sold by his firm and delivered to the respondent at Portland between July 12, 1911, and November 1, 1911, 210 gallons of whisky, gin, wine, and other intoxicating liquors. It was also shown that a deputy sheriff with a search warrant visited the office and premises of the respondent, and found "some intoxicating liquors there at that time. I think there was 33 pint bottles of whisky and a gallon bottle, and a gallon of gin, I can't say exactly, but several other large bottles. I took possession of them." Respondent had posted in his office a tax receipt from the Federal authorities showing he had paid the government tax as a retail liquor dealer.

The defense is that, because respondent is a regular practicing physician and surgeon, he has the legal right to keep, sell, furnish, and give away intoxicating liquors to his patients as they may require for medicinal purposes. The respondent was sworn in his own behalf, and stated that he had some correspondence with the office of the attorney general, and introduced in evidence a letter reading as follows:

"STATE OF MICHIGAN, OFFICE OF ATTORNEY GENERAL.
                    "LANSING, October 20, 1910.
"ROBERT B. BELL, M. D., Portland, Mich.
"*Dear Sir:*
"Your letter of October 19th, duly received. In reply thereto would say that this department has held a physician practicing in a county where the local-option law has been adopted, may administer intoxicating liquors to patients as a part of his treatment. Physicians are not, however, to become common sellers of such liquors, but if

in good faith they administer the same as a part of their treatment, we do not believe this would be a violation of the local-option law.

"Yours respectfully."

It was respondent's claim that druggists at Portland would not fill doctors' prescriptions, and that he had never sold intoxicating liquors without thinking its recipient needed it as a medicine. Several doctors were sworn to the effect that intoxicating liquors were regarded as medicines in many diseases.

At the close of the testimony the following occurred:

"Thereupon the prosecuting attorney moved the court for the direction of a verdict of guilty as charged in the information, and thereupon counsel for respondent moved the court to direct a verdict of not guilty."

No requests to charge were filed by either side.

The trial judge submitted the case to the jury in a long charge, from which we quote as follows:

"In these cases it is for the court to determine what the law is, and to interpret its meaning. That responsibility rests with the court. Also it rests with the court to instruct the jury as to what that law is, and then it becomes the duty of the jury to accept the instructions of the court and follow his interpretation of the law, and it becomes the duty of the court to direct whether under certain proven facts the defendant be found guilty and under what circumstances the defendant should be found not guilty.

"Sometimes it becomes the duty of the court to direct the jury as to what their verdict should be if they believe certain testimony to be true, and it becomes the duty of the jury to follow the instructions of the court as to the law. It is the duty of the jury and they assume the responsibility of determining whether facts may be submitted to them by the court. So each, the court and the jury, have their respective provinces.      *      *      *

"Testimony on the part of the people in this case has been adduced tending, as they claim, to show the respondent in this case kept a place where intoxicating liquors were sold, stored for sale, and furnished; that the respondent was not then and there a druggist or registered phar-

macist engaged in the sale of intoxicating liquors in compliance with the law.

" The claim is also made by the people and proof is offered tending, as they claim, to show and establish that the defendant did keep this place, used and occupied as an office in his business as a physician, and that he kept intoxicating liquors there; that he sold them to various parties; also, that he had not secured the right in compliance with the law as required from druggists and pharmacists to dispense liquors.

" Now the first question in this case the court must determine, as I have already stated, that is: Does the law of this State forbid a person who is a physician and not a licensed druggist, a druggist who has complied with the law by filing his bond—although a physician is authorized to practice medicine, is he authorized under the law to dispense intoxicating liquors or keep a place where it is dispensed, furnished, or sold?

" If so, then the question is important, if he is authorized so to do, then the question of good faith would be important in determining the extent of furnishing or dispensing, as to whether he has by exceeding his rights violated the law. We have a statute which reads as follows:

" 'It shall be unlawful for any person, directly or indirectly, himself, or by his clerk, agent, or employé, to manufacture, sell, keep for sale, give away or furnish vinous, malt, brewed, fermented or spirituous or intoxicating liquors, or any mixed liquor or beverages, or keep a saloon or any other place where any such liquors are manufactured, sold, stored for sale, given away or furnished in any county of this State on and after the first day of May next following after the adoption by the board of supervisors of such county of a resolution prohibiting the same.'

" It has been shown in this case that resolution has been adopted and local option, so called, was in force in this county from the 1st of July until the 9th of November last. And there is a provision in this section which reads as follows:

" 'The provisions of this section shall not apply to druggists or registered pharmacists selling such liquors under and in compliance with the restrictions and requirements imposed upon them by sections 25 and 26.'

"And further: A prescription given by a regular physician would entitle a party to obtain liquor at the drug store, but the law is silent as to a physician dispensing

liquor. They have the right to say whether a man needs it. They have a right to give a prescription, and that man can go to a drug store and obtain that liquor after that determination is made, but nowhere does the law give in words the right to a physician to dispense. It safeguards the handling of liquor by the drug store keeper by requiring a bond and stating the conditions under which that druggist shall sell or furnish, but nowhere does it impose any condition or state upon what terms any other person can dispense liquor.

"So far as any question as to what we think the law ought to be, what our prejudices may be, or how we may feel personally towards persons that may be charged with a violation of it, does the law authorize the respondent to dispense liquor, alcoholic liquor?

"After a consideration of this question, gentlemen, the defense claim in this case that alcoholic liquor is and should be considered as a medicine. Therefore, a physician authorized under the State law to practice medicine in every branch of its various departments, or in every department of that system, has a right to dispense liquor as a medicine.

"As a question of law, I state to you that alcoholic liquor is not to be included in the list of drugs or medicines that is not referred to by the terms of this law. It may be used, alcoholic liquor may be used, in connection with the practice of medicine, it is true. The statute is not only silent as to giving a physician the right, but expressly says it shall be unlawful for any person to keep a place where such liquors are sold and dispensed, except druggists under certain conditions. The defendant does not fall within the exceptions in this case. He has not complied with the conditions the law imposes.

"A drug store under this law, gentlemen, is the only legal place in the county for keeping liquors of this character for sale. A druggist is the only one authorized to sell and dispense, and that must be upon a written prescription of a physician afer a diagnosis of the ailment in the case.

"When the law forbids you and I cannot change it, we cannot extend its meaning nor its provisions. We cannot and should not read into the law what was not there written nor intended, not being there in letter nor in spirit. The sale, or keeping a place for the sale of intoxicating liquors, is not practicing medicine as contemplated by the

statute as to its several departments. No permit by law was given to this defendant, or to physicians not having complied with the terms of the exceptions, and they are prohibited the same as other persons. It may be it will be a hardship in some cases, but it is our duty to enforce the law as we find it. If a change in the law is desired by the people, application will have to be made to the legislature of this State, and not in the courts.

"So I say to you, gentlemen, if you believe the defendant kept a place where intoxicating liquors were sold, stored for sale, and furnished, it is your duty to return a verdict of guilty. If you are so satisfied beyond a reasonable doubt. If you are not satisfied, it is your duty to acquit. You may retire, gentlemen, and consider your verdict."

The jury returned a verdict of guilty.

The contention of counsel for respondent is as follows:

"Although there are 10 assignments of error in this bill of exceptions and record, there is in reality but one important question for the consideration of the court, and we believe it logically requires discussion at the beginning of our brief. Can a physician, engaged in the regular practice of his profession in a county where the Michigan local-option law is in force, administer intoxicating liquors as medicine to his patients after such examination or diagnosis as satisfies his professional judgment that intoxicating liquor is indicated as proper medical treatment? By the refusal to direct a verdict in favor of the respondent in this case, and by the refusal to submit to the jury the question of the good faith of the respondent, and by the direction of a verdict in favor of the people in the case at bar, the trial court has determined that it is not lawful under any circumstances for a physician in a local-option county to administer and dispense intoxicating liquors medicinally to his patients."

An examination of the record will show that the above contention is not sustained by the record. As before stated, the respondent insisted upon a directed verdict in his favor. He made no requests to charge. It is true the court, after quoting from the statute, said, " but nowhere does the law give in words the right to a physician to dispense," but a reading of the entire charge shows that the question was put up to the jury:

"So I say to you, gentlemen, if you believe the defendant kept a place where intoxicating liquors were sold, stored for sale and furnished, it is your duty to return a verdict of guilty, if you are so satisfied beyond a reasonable doubt. If you are not satisfied, it is your duty to acquit. You may retire, gentlemen, and consider your verdict."

Upon this record as made it is not necessary to pass upon the question of whether the attorney general's office was right in saying to respondent that in a local-option county a practicing physician "may administer intoxicating liquors to patients as a part of his treatment, * * *" but, if in good faith they administer the same as a part of their treatment, they are not within the law. There was an abundance of testimony that respondent did not follow the suggestions made in this letter. The following authorities are germane to the questions involved: Section 1 of Act No. 261 of the Public Acts of 1911, reading in part as follows:

"It shall be unlawful for any person, directly or indirectly, himself or by his clerk, agent or employé, to manufacture, sell, keep for sale, give away or furnish any vinous, malt, brewed, fermented, spirituous or intoxicating liquors, or any mixed liquor or beverages, any part of which is intoxicating, or keep a saloon or any other place where any such liquors are manufactured, sold, stored for sale, given away or furnished in any county of this State on and after the first day of May next following after the adoption by the board of supervisors of such county of a resolution prohibiting the same. * * * *Provided, however,* that the provisions of this section shall not apply to druggists or registered pharmacists selling any such liquors under and in compliance with the restrictions and requirments imposed upon them by sections twenty-five and twenty-six of this act and who have given the bond required by the general liquor law of this State."

The case of *People* v. *Rice*, 161 Mich. 657 (126 N. W. 981); following which case an amendment was made to the law (section 26, Act No. 261, Pub. Acts 1911), which we quote as follows:

"Any physician who prescribes any of the liquors hereinbefore mentioned for any person who he knows or has

good reason to believe intends to use them in whole or in part as a beverage or in any other manner contrary to the provisions of this act or without a diagnosis showing that liquor is indicated shall be guilty of violating this act."

In *People* v. *Sharrar*, 164 Mich. 267 (127 N. W. 801, 130 N. W. 693), this court said, among other things:

" The purpose of the local-option law is to prohibit sales of liquor as a beverage in certain localities. It is not its purpose to forbid, or even to diminish, sales of liquor for medicinal or mechanical purposes. In local-option counties the drug store is the only place where liquor may be dispensed for such lawful purposes. The regulations and restrictions upon the traffic are aimed at preventing sales of liquor to be used as a beverage under the guise of sales for medicinal and scientific purposes."

See, also, *Holt* v. *State*, 62 Neb. 134 (86 N. W. 1073); *Carson* v. *State*, 69 Ala. 235; *State* v. *Gray*, 61 Conn. 39 (22 Atl. 675); *State* v. *Fleming*, 32 Kan. 588 (5 Pac. 19); *State* v. *Bissell*, 67 Iowa, 616 (25 N. W. 831); *State* v. *Benadom*, 79 Iowa, 90 (44 N. W. 218).

The conviction is affirmed, and the cause is remanded for further proceedings.

STEERE, McALVAY, BROOKE, STONE, and BIRD, JJ., concurred. BLAIR and OSTRANDER, JJ., did not sit.