PEOPLE *v.* HUMPHREY.

1. CONSTITUTIONAL LAW—INTOXICATING LIQUORS—STATUTES—TITLE —PRACTICE OF MEDICINE.

Act No. 261, Pub. Acts 1911, amending Act No. 207, Pub. Acts 1889, known as the local option law, without amending its title, providing that any physician who prescribes any intoxicating liquors for any person who he knows or has good reason to believe intends to use them as a beverage, or without a diagnosis showing that liquor is indicated, shall be guilty, is not unconstitutional; its object to prohibit the sale and furnishing of intoxicating liquors as a beverage being expressed in the title; and it is not open to the objection that it will interfere with, or regulate, the practice of medicine.

2. INTOXICATING LIQUORS—CRIMINAL LAW—EVIDENCE—INTENT.

In the prosecution of a physician for violation of Act No. 261, Pub. Acts 1911, amending the local option law, by prescribing whisky for a person he had good reason to believe intended to use it as a beverage, evidence of the frequency and ease with which the prescriptions were secured was competent as indicative of the mental attitude of the accused.

3. CRIMINAL LAW—ADMISSIONS—CONFESSIONS—EVIDENCE.

Respondent's remarks to the prosecuting attorney, at the time of his arrest, that "I guess I am in wrong so far as this fellow H. is concerned," and expressing a desire to get rid of the matter as quickly as he could, and that he "didn't want it in the papers," was not a confession or an admission of guilty knowledge or belief.

4. SAME—INSTRUCTIONS—CHARACTER WITNESSES.

Instructions by the trial judge denying to respondent the benefit of proof of good character for the purpose of creating a doubt of his guilt, must be regarded as a miscarriage of justice. *People* v. *Jassino,* 100 Mich. 536.

5. SAME—STATUTES—ERROR WITHOUT PREJUDICE.

Nor can it be said that such instruction was error without prejudice, bringing it within the provisions of Act No. 89, Pub. Acts 1915.

6. SAME—TRIAL—MISCARRIAGE OF JUSTICE.

It must always be regarded as a miscarriage of justice when the trial court affirmatively denies to a respondent the benefit of an elementary rule favorable to him, upon which, by the giving of testimony which invokes the application of the rule, he relies.

Exceptions before sentence from Ingham; Collingwood, J. Submitted October 16, 1916. (Docket No. 170.) Decided December 21, 1916.

James A. Humphrey was convicted of violating the local option law. Reversed.

*Grant Fellows,* Attorney General, and *William C. Brown,* Prosecuting Attorney, for the people.

*Warner & Raudabaugh,* for respondent.

OSTRANDER, J. Respondent, a physician, is charged with having prescribed, February 16, 1915, a quart of whisky for one Hugh Carpenter, then and there having good reason to believe that said Carpenter intended to use the whisky as a beverage, in whole or in part, contrary to the provisions of a certain resolution adopted by the board of supervisors of Ingham county pursuant to Act No. 207, Pub. Acts 1889, as amended (2 Comp. Laws 1915, § 7080 *et seq.*), said liquor having been prescribed—

"as aforesaid, by said James A. Humphrey in violation of Act No. 207 of the Public Acts of the State of Michigan for the year A. D. 1889, as amended, and contrary to the form of the statute in such case made and provided."

The information was filed September 27, 1915, and respondent, arraigned, stood mute. His counsel moved to quash the information and discharge the respondent for the reasons:

"(1) That there is no crime charged against the

said James A. Humphrey in said information known to the laws of the State of Michigan.

"(2) That Act No. 207 of the Public Acts of 1889, as amended by Act No. 261 of the Public Acts of 1911, is unconstitutional and void.'

"(3) That Act No. 207 of the Public Acts of 1889, as amended by Act No. 261 of the Public Acts of 1911, under which the offense in said information is charged, is unconstitutional and void, in that said act as amended contains more than one subject.

"(4) That the offense charged in said information is not expressed in the title of said act as amended."

The motion was overruled. The people were permitted, over objection, to introduce in evidence other prescriptions, and the witness Carpenter was required to answer the question:

"I will ask you whether Dr. Humphrey has given you a prescription for liquor for any one else on February 16th?"

Respondent introduced evidence of his good character, upon which subject the court advised the jury, wrongfully, it is claimed, as follows:

"In this matter the respondent placed in evidence his good character. Now, a man's character is a valuable asset under all circumstances; and is proper evidence to be considered in doubtful cases to determine whether or not a man having that good character would commit such an offense. It often avails, and should avail, to acquit a man under such circumstances; but that when there is positive proof of the commission of an offense, the good character cannot avail to overthrow that proof. That means just what it says."

A motion to direct an acquittal was refused. The points indicated are presented and argued in this court.

1. The title to Act No. 207, Pub. Acts 1889, is:

"An act to prohibit the manufacture, sale, keeping for sale, giving away or furnishing of vinous, malt, brewed, fermented, spirituous or intoxicating liquors, or any mixed liquor or beverage, any part of which is intoxicating, and to prohibit the keeping of any

saloon or other place for the manufacture, sale, storing for sale, giving away or furnishing of such liquors or beverages, and to suspend the general laws of the State relative to the taxation and regulation of the manufacture and sale of such liquors in the several counties of this State under certain circumstances; to authorize the qualified electors of the several counties in this State to express their will in regard to such prohibition by an election, and to authorize and empower the board of supervisors of the several counties, after such election, if they shall determine the result to be in favor of such prohibition, to prohibit the manufacture, sale, keeping for sale, giving away or furnishing of any such liquors, or the keeping of a saloon or any other place for the manufacture, sale, storing for sale, giving away or furnishing of the same within their respective counties; and to provide for penalties and rights of action in case of its violation."

The act contains 24 sections. By Act No. 183, Pub. Acts 1899, various sections were amended and a new section, 25, was added. A further amendment was made by Act No. 170, Pub. Acts 1903, and still further amendments, adding 14 sections, were made by Act No. 107, Pub. Acts 1909. Lastly, Act No. 261, Pub. Acts 1911, amended section 26, added in 1909, in the particular here in question. The amendment inserted in section 26 (2 Comp. Laws 1915, § 7104) the words:

"And any physician who prescribes any of the liquors hereinbefore mentioned for any person who he knows or has good reason to believe intends to use them in whole or in part as a beverage or in any other manner contrary to the provisions of this act or without a diagnosis showing that liquor is indicated shall be guilty * * *."

This amendment followed the decision of this court in *People* v. *Rice*, 161 Mich. 657 (126 N. W. 981), and was referred to in *People* v. *Bell*, 170 Mich. 675, 682 (137 N. W. 107).

The argument for respondent is that this amendment introduced new subject-matter into the statute,

made that an offense which was not before an offense, attempted to regulate the practice of medicine, and subjected physicians, under certain circumstances, to a penalty, of none of which matters the title gives notice. Reference is made to *Grosvenor* v. *Duffy,* 121 Mich. 220 (80 N. W. 19) ; *Young* v. *Moore,* 162 Mich. 60 (127 N. W. 29) ; *McCabe* v. *Burnside Township Board,* 181 Mich. 683 (148 N. W. 197) ; *People* v. *Quider,* 183 Mich. 82 (149 N. W. 1) ; *People* v. *Blumrich,* 183 Mich. 133 (149 N. W. 1040) ; *Vernor* v. *Secretary of State,* 179 Mich. 157 (146 N. W. 338, Am. & Eng. Ann. Cas. 1915D, 128).

It is clear that the object—the single object—of the amendment is to prohibit the sale and furnishing of intoxicating liquors to be used as a beverage; equally clear that that is the object of the law. This object is expressed in the title. It is not apparent how the enforcement of the law as amended will at all interfere with, or regulate, the practice of medicine.

2. The prosecution presented three witnesses, Carpenter and Burr and Champney, the respondent none except character witnesses. The testimony for the people tended to prove that respondent was a physician, practicing his profession in Lansing, that Carpenter, who gave his name to the doctor as Hughes, visited him at his office upon various occasions, namely, October 15, November 24, December 2, December 6, December 15, December 28, and December 31, in the year 1914, January 5, 14, 18, 30, February 2, 3, 11, 15, 16, 1915, upon each of which occasions he secured from him a prescription for two pints of whisky, each time except the last for C. A. Hughes, the last time for C. H. Hughes. Directions in the first prescription were, "Tablespoonful in hot water three times a day," in the others, "As directed for stimulant." Carpenter represented that he had a cold, and upon one or more occasions he complained of nervousness. No examina-

tion of Carpenter was made by the doctor. Oral directions were to make a hot drink and take it once a day before going to bed, quantity not specified. Nor did the doctor inquire how much the patient took in hot water before going to bed. The witness Burr called the doctor by telephone, and asked him to give a prescription for himself to Carpenter when Carpenter called. Burr had before then seen the doctor, talked with him about an ailment, the nature of which is not disclosed, but had not been examined by him at any time. This was on February 16, 1915. Carpenter told the doctor that Burr was busy, and wanted him to call for it. This was likewise for two pints of whisky. He wrote and gave to Carpenter in January one or two similar prescriptions for Burr. After his arrest the respondent said to the prosecuting attorney, "I guess I am in wrong so far as this fellow Hughes is concerned," and expressed a desire to get rid of the matter as quickly as he could, and "didn't want it in the papers."

The question for the jury (no one disputing the fact that the prescriptions were given by respondent) was whether, upon the particular occasion, respondent gave the prescription for a person he knew, or had good reason to believe, intended to use the liquor, in whole or in part, as a beverage. It involved the mental attitude of the respondent, his knowledge, his information. Carpenter, a young man of 25 years, a stenographer, represented that he had a cold, lived at the Hotel Wentworth, and upon his first visit said that he wanted a quart of whisky. No one would deny that if he had repeated the representation daily, securing a prescription for a half gallon of whisky each day, it would be some evidence that he or some one else was using it as a beverage. He did not so often secure a prescription, but often enough so that a jury might be satisfied beyond doubt that the doctor knew it was not

procured for medicinal purposes. And as indicative of his mental attitude, it was competent to prove, not only the frequency of the applications made by Carpenter, but the ease with which another, by telephone, secured a prescription for a like amount of liquor. See *People* v. *Rice, supra.*

3. Respondent preferred no request to charge upon the subject of the effect to be given to the testimony of character witnesses. Nor after the charge was delivered was the attention of the court attracted to the necessity for saying more than had been said upon the subject. The charge is like the one commented on in *People* v. *Jassino,* 100 Mich. 536 (59 N. W. 230). It was said (page 537):

"By the instruction above quoted the respondent was denied the benefit of proof of good character if the jury should find positive evidence tending to show the commission of the offense. Evidence of good character is admissible, not only in a case where doubt otherwise exists, but may be offered for the purpose of creating a doubt."

It remains to be seen whether a distinction between the two cases may reasonably be drawn, or whether, for any reason, the faulty charge may be regarded as nonprejudicial to respondent. Six witnesses were called who each testified to an acquaintance with respondent extending over a period of years, and, in substance and effect, that his reputation as a physician and for honor and integrity is good. Some of them added "morality" to the virtues which he, by reputation, possesses. It is suggested upon the part of the people that the nature of the case is such that the character evidence would not raise a doubt in the minds of jurors concerning the mental attitude of respondent upon the particular occasion, he being charged with doing something prohibited, the doing of which, upon occasion, would not be likely to affect his general repu-

tation. it is said, further, that it is a case for applying Act No. 89, Pub. Acts 1915 (3 Comp. Laws 1915, § 14565), and for refusing to set aside the verdict because it does not affirmatively appear that the error complained of has resulted in a miscarriage of justice.

If what respondent said after his arrest, to the prosecuting attorney, could be regarded as a confession or admission that he knew or believed that the liquor was to be used as a beverage, the error in the charge would be regarded as error without prejudice, and a finding that there had not been a miscarriage of justice would be warranted. But it was not a confession or an admission of guilty knowledge, or belief, It must be always regarded as a miscarriage of justice when the trial court affirmatively denies to a respondent the benefit of an elementary rule favorable to him, upon which, by the giving of testimony which invokes the application of the rule, he relies. This case and *People* v. *Jassino, supra,* cannot be distinguished. See, also, *People* v. *Laird,* 102 Mich. 135, and note (60 N. W. 457) ; *People* v. *Van Dam,* 107 Mich. 425 (65 N. W. 277) ; *People* v. *Parker,* 166 Mich. 587 (131 N. W. 1120) ; *People* v. *Wilson,* 170 Mich. 669 (137 N. W. 92, 41 L. R. A. [N. S.] 216).

It follows that the conviction must be set aside, and a new trial granted.

STONE, C. J., and KUHN, BIRD, MOORE, STEERE, and BROOKE, JJ., concurred. PERSON, J., did not sit.