*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

CHRISTOPHER LEHMAN TADGERSON,

Defendant-Appellant.

FOR PUBLICATION
March 23, 2023
9:00 a.m.

No. 360094
Manistee Circuit Court
LC No. 20-005067-FC

Before: CAVANAGH, P.J., and MARKEY and BORRELLO, JJ.

MARKEY, J.

Defendant, Christopher Lehman Tadgerson, appeals by leave granted the judgment of sentence after having entered a conditional plea of no contest to the offense of being a prisoner in possession of a controlled substance (PPCS), MCL 800.281(4). Defendant was in his prison cell when another inmate passed defendant's cell and thrust a crumpled piece of paper through a slot in defendant's cell door. Defendant grabbed it; however, a corrections officer who witnessed the conduct promptly ordered defendant to give the officer the paper. Inside the crumpled paper were two strips of a controlled substance. The gravamen of defendant's argument is that although this Court in *People v Ramsdell*, 230 Mich App 386; 585 NW2d 1 (1998), held that PPCS under MCL 800.281(4) is a strict-liability offense, it should now be construed as having a scienter requirement or *mens rea* element pursuant to Michigan Supreme Court precedent issued after *Ramsdell* and in light of MCL 8.9, which was enacted under 2015 PA 250 after *Ramsdell* was released. The trial court disagreed, and defendant entered the no-contest plea conditioned upon preserving his right to appeal and present his argument to this Court. We affirm.

## I. BACKGROUND

In 2015, defendant was sentenced to 58 months to 15 years' imprisonment after being convicted by a jury of resisting and obstructing a law enforcement officer causing injury, MCL 750.81d(2). This Court affirmed defendant's conviction and sentence. *People v Tadgerson*, unpublished per curiam opinion of the Court of Appeals, issued October 13, 2016 (Docket No. 327187).

With respect to this case, Corrections Officer Shawn Larson testified at the preliminary examination that he observed another prisoner "hesitate[] a few times walking back and forth" and then pull something out of his pocket and drop it into defendant's cell through a slot in the cell door. Officer Larson immediately approached defendant's cell and asked for the object, which appeared to be "a crumpled-up piece of paper." According to Officer Larson, defendant asserted that it "was just a note with some words on it." The officer responded that, if true, it "won't be a big deal." Officer Larson then asked to read it first, but defendant refused and began opening the paper himself. The officer immediately proceeded to enter defendant's prison cell and obtained the crumpled piece of paper. Officer Larson testified that defendant had initially refused to hand him the crumpled paper, but after watching a video recording of the event captured by a surveillance camera, the officer agreed that after he opened defendant's cell door, defendant handed him the paper. When Officer Larson opened the paper, he discovered two orange strips of what he believed to be Suboxone. He next took the paper and strips back to "the bubble" where officers were stationed, and, in the process, defendant shouted an expletive at Officer Larson.[1]

Officer Larson wrote up a misconduct for defendant and secured the suspected contraband in a locker. In following up on the misconduct, Officer Larson was informed that defendant had claimed a belief that candy had been tossed into his prison cell. Officer Larson testified that he had not found or seen any candy in defendant's cell, nor was there candy on defendant's person. At the time the contraband was discovered, the officer did not personally know defendant or the prisoner involved in the conveyance or whether they had any kind of prior relationship. Officer Larson was not involved in writing the ensuing incident report. He testified that a prisoner would

---

[1] This Court has been provided with a DVD containing two video recordings of the incident at issue. Neither video has sound. Both videos are two minutes and 57 seconds long, and they depict the same events from different angles. They show a hallway with blue doors on both sides, all of which have horizontal slots at the bottom that flip open. At the outset, there are prisoners sweeping and cleaning the hall, and a corrections officer, presumably Officer Larson, is standing in the hallway. Approximately 13 seconds into the video, a prisoner walking through the halls ducks down and tosses a small object into the slot for cell door 19. It appears that the object did not make it all the way into the cell, and a hand, presumably belonging to defendant, quickly reaches out to grab the object. The corrections officer then approaches the cell and speaks to the occupant through an upper vertical slot in the cell door from approximately 28 seconds into the video until about 55 seconds into the video. At that time, the officer produces a set of keys and begins unlocking the cell door. At approximately one minute and two seconds into the video, the prisoner hands the officer a small object, and the officer shuts the cell door. The officer then walks slowly down the hall and spends most of the rest of the video apparently pondering the object (he is out of view of one of the cameras for a portion of that time). In one of the videos, it appears that the prisoner is standing at the door to his cell, looking out through the vertical slot; the prisoner has some exchanges with other prisoners in the hall during that time. At approximately two minutes and twenty seconds, the officer walks back past the cell and seemingly has some kind of brief exchange with the occupant before walking out of view.

typically be drug-tested after the kind of incident at issue, but Officer Larson had no personal knowledge whether defendant was actually tested.

Michigan State Police Detective Sergeant Steve Arendt testified that he was responsible for emptying the lockers at the prison and that he was the investigator assigned to look into the matter. He retrieved the two orange strips found in the crumpled piece of paper and sent them to the crime laboratory for testing. The strips tested positive for buprenorphine, otherwise known as Suboxone, a Schedule III controlled substance. Sergeant Arendt was informed that defendant did not have a prescription for that drug. The sergeant explained that defendant had been tested for the presence of drugs in his system and that although the initial test revealed a positive screen, the sample taken from defendant was then retested at the laboratory and found to be negative.

Defendant was charged with PPCS. At the preliminary examination, defendant argued that he should not be bound over because the evidence demonstrated that he did not knowingly come into possession of a controlled substance when the strips of Suboxone were thrust into his cell. The district court did not comment on whether MCL 800.281(4) had a *mens rea* requirement or element, but it did opine that defendant's initial reluctance to hand the crumpled paper to Officer Larson followed by the expletive that defendant hurled at the officer constituted sufficient evidence of knowledge for purposes of establishing probable cause. Consequently, the district court bound defendant over to the circuit court for trial. The prosecutor filed notice of a fourth-offense habitual offender enhancement. At defendant's arraignment, defendant entered a plea of not guilty.

Defendant next filed a motion that essentially sought to add a scienter requirement or *mens rea* element to the offense of PPCS for purposes of jury instructions at a future trial. As indicated earlier, defendant contended that although this Court in *Ramsdell* held that PPCS is a strict-liability offense with no need to prove a culpable mental state, it should now be construed as having a scienter requirement or *mens rea* element pursuant to Michigan Supreme Court precedent issued after *Ramsdell* and in light of MCL 8.9, which was enacted under 2015 PA 250 after *Ramsdell* was released. At a hearing on defendant's motion, the trial court expressed doubt that it could disregard binding caselaw, i.e., *Ramsdell*. Ultimately, the court denied defendant's motion, ruling that it remained bound by the caselaw and that it would be inappropriate to imply a scienter requirement with respect to a statute governing a penal environment.

Defendant filed an application for leave to appeal, but this Court denied the application "for failure to persuade the Court of the need for immediate appellate review." *People v Tadgerson*, unpublished order of the Court of Appeals, entered March 18, 2021 (Docket No. 356035). Thereafter, the parties negotiated a conditional no-contest plea that preserved defendant's right to appeal the issue concerning whether MCL 800.281(4) is a strict-liability crime.[2] The plea agreement also resulted in dismissal of the fourth-offense habitual offender

---

[2] MCR 6.301(C)(2) provides:

> A defendant may enter a conditional plea of guilty, nolo contendere, guilty but mentally ill, or not guilty by reason of insanity. A conditional plea preserves for appeal a specified pretrial ruling or rulings notwithstanding the plea-based

enhancement and a recommendation that defendant's minimum sentence not exceed 14 months. The trial court ensured that defendant understood the nature and consequences of the no-contest plea, and the plea was entered. The court apparently used the incident report to establish the factual basis for the no-contest plea. The trial court sentenced defendant to 14 months to five years' imprisonment to be served consecutively to defendant's resisting-and-obstructing sentence. Defendant appeals by leave granted. *People v Tadgerson*, unpublished order of the Court of Appeals, entered March 18, 2022 (Docket No. 360094).

## II. ANALYSIS

### A. DEFENDANT'S ARGUMENTS ON APPEAL

Defendant argues that he is entitled to have a jury instructed on all material defenses supported by the evidence and in accordance with applicable law. Defendant contends that strict-liability crimes are disfavored and that a *mens rea* element will be inferred unless the Legislature clearly indicated that there is no culpable-mental-state component of an offense. Defendant additionally maintains that MCL 800.281(4) contains no clear expression that it is a strict-liability crime. Therefore, according to defendant, pursuant to MCL 8.9 and precedent from our Supreme Court, a requirement that a prosecutor prove that a prisoner *knowingly* possessed a controlled substance must be implied. Defendant asserts that because *Ramsdell* predated MCL 8.9 and pertinent Supreme Court precedent, the trial court erred by relying on *Ramsdell*. Furthermore, defendant claims that *Ramsdell* was legally unsound even at the time that it was issued. He argues that because there is a significant penalty for violating MCL 800.281(4)—it is a felony punishable by up to five years' imprisonment, MCL 800.285(1)—strict liability is wholly inappropriate. Finally, defendant contends that prisoners generally have no reasonable expectation of privacy; therefore, construing MCL 800.281(4) as a strict-liability offense is unnecessary to maintaining security and chills any rehabilitative potential offered by interactions between prisoners.

### B. STANDARD OF REVIEW AND PRINCIPLES OF STATUTORY CONSTRUCTION

We review de novo issues of statutory construction. *People v Pinkney*, 501 Mich 259, 267; 912 NW2d 535 (2018). When interpreting a statute, this Court first focuses on the plain language of the statutory provision, striving to accomplish the goal of giving effect to the intent of the Legislature. *Id.* at 268. We must read individual words and phrases in the context of the entire legislative scheme, examining the statute as a whole. *Id.* When the language of a statute is clear and unambiguous, the statute must be enforced as written, and no further judicial construction is required or permitted. *Id.* If at all possible, every word in a statute should be given meaning and no word should be rendered nugatory or treated as surplusage. *Id.* at 288. When there is a potential conflict between statutes, this Court must, to the extent reasonably possible, harmonize them to

---

judgment and entitles the defendant to withdraw the plea if a specified pretrial ruling is overturned on appeal. The ruling or rulings as to which the defendant reserves the right to appeal must be specified orally on the record or in a writing made a part of the record. The appeal is by application for leave to appeal only.

give effect to the intent of the Legislature. *People v Allen*, 507 Mich 597, 609 n 19; 968 NW2d 532 (2021).

## C. DISCUSSION AND RESOLUTION

Defendant was charged with and pleaded no contest to a violation of MCL 800.281(4), which provides, subject to an inapplicable exception, that "a prisoner shall not possess any alcoholic liquor, prescription drug, poison, or controlled substance." Defendant asserts that the statutory provision must be construed as requiring proof that he knowingly possessed the Suboxone, even though the provision is silent in regard to scienter.[3] In *Ramsdell*, 230 Mich App at 392, this Court discussed its view of the elements of PPCS, stating:

> First, a prosecutor must prove beyond a reasonable doubt that the defendant is, in fact, a "prisoner." Second, a prosecutor must prove beyond a reasonable doubt that the defendant "possessed" a controlled substance (or other item proscribed by MCL 800.281[4]), i.e., that the defendant had actual physical control of the controlled substance. It is undisputed on the record that the prosecutor in this case proved both of these elements beyond a reasonable doubt. There were no other elements for the prosecutor to prove. The word "knowingly" is absolutely absent from the statute as enacted by the Legislature and signed into law by the Governor.

With respect to Supreme Court precedent concerning strict-liability crimes, citing *People v Rice,* 161 Mich 657, 664; 126 NW 981 (1910), and *People v Quinn*, 440 Mich 178, 187; 487 NW2d 194 (1992), our Supreme Court in *People v Tombs*, 472 Mich 446, 451; 697 NW2d 494 (2005), observed that criminal intent is normally an element of a crime and that statutes that create strict liability are not favored. Some indication of legislative "intent, *express or implied*, is required to dispense with *mens rea* as an element of a crime." *Id.* at 455 (quotation marks and citation omitted; emphasis added). As traceable to the common law, there exists a longstanding presumption that unless otherwise reflected in a statute, the Legislature intends for a defendant to possess a culpable mental state relative to the statutory elements that criminalize otherwise innocent conduct. *People v Magnant*, 508 Mich 151, 167; 973 NW2d 60 (2021).

The basic guiding principles in the preceding paragraph, which were enunciated by our Supreme Court *before and after Ramsdell*, were essentially acknowledged and accepted by the *Ramsdell* panel. *Ramsdell*, 230 Mich App at 398. The Court in *Ramsdell*, *id.*, also recognized and quoted the following language from *People v Lardie*, 452 Mich 231, 239, 246; 551 NW2d 656 (1996), overruled on other grounds by *People v Schaefer*, 473 Mich 418, 422; 703 NW2d 774 (2005):

> In order to determine whether a statute imposes strict liability or requires proof of a *mens rea*, that is, a guilty mind, this Court first examines the statute itself and seeks to determine the Legislature's intent. In interpreting a statute in which the Legislature has not expressly included language indicating that fault is a

---

[3] Proof of scienter refers to evidence "that a person knowingly violated" a criminal statute. *People v Schumacher*, 276 Mich App 165, 167; 740 NW2d 534 (2007).

necessary element of a crime, this Court must focus on whether the Legislature nevertheless intended to require some fault as a predicate to finding guilt.

* * *

Where the offense in question does not codify the common law and omits reference to the element of intent, this Court will examine the Legislature's intent in enacting the legislation to determine whether there is a *mens rea* requirement.

Employing this language from *Lardie* and comparing MCL 800.281(4) to general drug offenses, the *Ramsdell* panel held:

As explained above, a conclusion that the Legislature sub silentio intended to impose a "knowledge" requirement as part of the prisoner in possession of contraband statute at issue in this case is untenable in light of the differing language between the statute at hand, MCL 800.281(4), which includes no reference to knowingly or intentionally possessing contraband, and the general statute regarding possession of controlled substances, MCL 333.7403, which proscribes only "knowingly or intentionally" possessing a controlled substance. Inasmuch as one must presume that (1) the Legislature was familiar with existing laws regarding the subject of possession of controlled substances when it enacted MCL 800.281(4) in its current form in 1982, and (2) the general statute regarding possession of controlled substances had been in effect—with the pertinent "knowingly or intentionally" language—since 1978, it follows that the Legislature did not intend to include a requirement of knowing or intentional possession in MCL 800.281(4). Thus, no "knowledge" element should be "read into" MCL 800.281(4). Rather, given that the Legislature included no express intent element in MCL 800.281(4) in the face of such an element being present in the general statute against possession of controlled substances, we conclude that the Legislature intended for MCL 800.281(4) to be a strict liability crime. [*Ramsdell*, 230 Mich App at 398-399 (citations omitted).]

This Court in *Ramsdell* effectively ruled that our Legislature implicitly indicated an intent to dispense with a *mens rea* element with respect to an offense under MCL 800.281(4).

Michigan Supreme Court precedent issued after *Ramsdell*—setting forth pertinent principles that had already existed long before *Ramsdell* was decided and that *Ramsdell* recognized—did not explicitly or implicitly modify or overrule *Ramsdell.* See MCR 7.215(J)(1) ("A panel of the Court of Appeals must follow the rule of law established by a prior published decision of the Court of Appeals issued on or after November 1, 1990, that has not been reversed or modified by the Supreme Court, or by a special panel of the Court of Appeals as provided in this rule.").

Moreover, although *Ramsdell* did not rely on the language in reaching its holding, we note that MCL 800.281(2) provides that "a person who *knows or has reason to know* that another person is a prisoner shall not sell, give, or furnish, either directly or indirectly, any . . . controlled substance to that prisoner anywhere outside of a correctional facility." (Emphasis added.) Our "Legislature

-6-

is presumed to be familiar with the rules of statutory construction, and when it is promulgating new laws it is presumed to be aware of the consequences of its use or omission of statutory language." *People v Kosik*, 303 Mich App 146, 158; 841 NW2d 906 (2013) (quotation marks and citation omitted). When enacting MCL 800.281, the Legislature expressly included, in part, a *mens rea* requirement in subsection (2) of the statute, which covers an offense separate from the one at issue here, but wholly omitted a *mens rea* requirement in subsection (4) of that very same statute. Indeed, subsection (2) of MCL 800.281 specifically contains the exact culpable mental state that defendant wishes to imply for purposes of subsection (4)—a "knowing" or "knowingly" requirement. In our view, this plainly demonstrated that the Legislature intended MCL 800.281(4) to be a strict-liability offense.

After *Ramsdell* was decided in 1998, the Legislature enacted MCL 8.9 pursuant to 2015 PA 250, and MCL 8.9 provides, in relevant part:

(1) Except as otherwise provided in this section, a person is not guilty of a criminal offense committed on or after January 1, 2016 unless both of the following apply:

(a) The person's criminal liability is based on conduct that includes either a voluntary act or an omission to perform an act or duty that the person is capable of performing.[4]

(b) The person has the requisite degree of culpability for each element of the offense as to which a culpable mental state is specified by the language defining the offense.

(2) If the statutory language defining a criminal offense does not specify any degree of culpability and plainly imposes strict criminal liability for the conduct described in the statute, then culpability is not required for a person to be guilty of the offense. The fact that a subsection of a statute plainly imposes strict liability for an offense defined in that subsection does not by itself plainly impose strict criminal liability for an offense defined in another subsection of that statute that does not specify a degree of culpability.

(3) Except as provided in subsection (4), if statutory language defining an element of a criminal offense that is related to knowledge or intent or as to which mens rea could reasonably be applied neither specifies culpability nor plainly imposes strict liability, the element of the offense is established only if a person acts with intent, knowledge, or recklessness.

---

[4] Involuntary acts provide a defense against the *actus reus* element of a crime. *People v Likine*, 492 Mich 367, 393; 823 NW2d 50 (2012). "The common thread running through . . . 'involuntariness' defenses is that the act does not occur under the defendant's control, and thus the defendant was powerless to prevent its occurrence and cannot be held criminally liable for the act." MCL 8.9(1)(a) would protect defendant against some of the concerns that he raises on appeal.

(4) Subsection (3) does not relieve the prosecution of the burden of proving the culpable mental state required by any definition incorporated into the offense.

* * *

(9) The mere absence of a specified state of mind for an element of a covered offense shall not be construed to mean that the legislature affirmatively intended not to require the prosecution to prove any state of mind.

Clearly, given the enactment of MCL 8.9, the question whether MCL 800.281(4) is a strict-liability offense is now governed by MCL 8.9, which reflects the Legislature's decision to set the criteria regarding the analysis of whether an offense includes a scienter requirement or *mens rea* element. MCL 800.281(4) must be analyzed under MCL 8.9. But to the extent that MCL 8.9 incorporates and codifies caselaw principles recognized and applied by this Court in *Ramsdell*, we do believe that it is appropriate to consider and honor *Ramsdell*'s application of those principles to MCL 800.281(4). See *People v Morris*, 314 Mich App 399, 409; 886 NW2d 910 (2016) (legislative codification of a judicially-defined requirement without the Legislature defining it itself gives rise to a logical conclusion of a legislative intent to adopt the judiciary's construction of that requirement).

MCL 8.9(1)(b) requires a degree of culpability for the elements of an offense, but only where "a culpable mental state is specified by the language defining the offense." MCL 800.281(4) does not specify a culpable mental state; therefore, MCL 8.9(1)(b) cannot serve as a basis to incorporate a *mens rea* element into the offense of PPCS. MCL 8.9(2) indicates that culpability is not required when statutory language "does not specify any degree of culpability and plainly imposes strict criminal liability." No culpable mental state is included in MCL 800.281(4), leaving the question whether MCL 800.281(4) plainly imposes strict liability. *Ramsdell* ruled that the Legislature intended PPCS to be a strict-liability offense, but it did not specifically frame its decision in terms of MCL 800.281(4) *plainly* imposing strict liability. We conclude, however, on the strength of the reasoning and analysis in *Ramsdell* comparing the general drug-possession statute to MCL 800.281(4), along with our observation that subsection (2) of MCL 800.281 expressly includes a scienter requirement yet MCL 800.281(4) does not, that MCL 800.281(4) *plainly* imposes strict liability.

With respect to MCL 8.9(3), we agree there is an argument that "mens rea could reasonably be applied" to the "possession" element of PPCS. But because we have found that MCL 800.281(4) "plainly imposes strict liability," MCL 8.9(3) is not implicated and thus does not require proof of "intent, knowledge, or recklessness" in connection with PPCS.[5] Finally, in relation to MCL 8.9(9) and as detailed earlier, our holding today is not based on "[t]he mere absence of a specified state of mind for an element of [the] covered offense[.]" Rather, we have also taken into consideration

---

[5] We also note that MCL 8.9(3), when read in conjunction with subsection (4), could be interpreted as solely addressing statutory offenses that provide definitions for its elements. And there are no statutory definitions with regard to the elements in MCL 800.281(4); the term "possess" or "possession" is not statutorily defined.

-8-

the inclusion of a *mens rea* requirement in the general drug-possession statute, as alluded to and relied on in *Ramsdell*, as well as the inclusion of a *mens rea* element in subsection (2) of MCL 800.281.  We conclude that reversal is unwarranted; consequently, the no-contest plea is fully enforceable.

We affirm.

/s/ Jane E. Markey
/s/ Mark J. Cavanagh
/s/ Stephen L. Borrello