## William Hamilton v. The People.

*Criminal law: Evidence: Statements of co-defendant: Conspiracy.* A defendant tried separately may object to any testimony concerning the acts or sayings of another defendant, when there has been no evidence introduced to connect them together in a conspiracy, and no assurance that such proof will be made.

*Witnesses: State's evidence: Cross-examination: Feeling.* It is error to refuse to allow a witness who appears as state's evidence, to be asked on cross-examination whether he had not said to a person named that he had pleaded guilty, and that he would not go to state's prison alone. It bore directly on his disposition towards his co-defendants.

*Witnesses: Bias: Cross-examination: Looking up testimony.* The bias of a witness is always open to full cross-examination, and he may be properly asked as to the interest he has taken in the case and in getting proof.

*Evidence: Written statement: Cross-examination: Impeachment: Credibility.* Where such a witness acknowledged that he had made a written statement or narrative, which was shown him, and it was claimed to conflict with his testimony on the stand, and purported to explain how he was induced to testify for the prosecution; the whole paper should have been allowed to be introduced to impeach him, and it was error to require any part of it which was pertinent, to be excluded because it bore upon third persons. The defense were entitled to have his credibility fully tested before the jury, and his contradictions and explanations weighed.

*Criminal law: Good character.* Testimony of good character may always be introduced by a defendant in a criminal trial.— *People v. Garbutt,* 17 *Mich.,* 26.

*Heard January 28. Decided April 8.*

Error to Calhoun Circuit.

*Brown & Patterson* and *M. S. Brackett,* for plaintiff in error.

*Byron D. Ball, Attorney General,* for the People.

CAMPBELL, J.

This case was argued in connection with that of Thomas W. Hamilton (*supra p. 178*), as they were separately tried under the same information.    Many of the points raised in the two cases are identical.    No reference, therefore, will be made in this opinion to the points disposed of in the former case.    The proof, as in that case, depended chiefly on the testimony of William Fuller, one of the defendants below, who became a witness for the people.    He had sworn to an original conversation with Thomas and William Hamilton in regard to getting up a dance, and during its progress having a light put where it would, after burning down, reach combustibles in the barn.    He was then asked whether he had any conversation with James Hamilton on the day of the fire, in a certain field.    The question was objected to on the ground that he had not been present or taken part in the conspiracy, if there had been one; but the court overruled the objection, and Fuller testified to a remark concerning the dance, in a field where one Duane Patchin was present, to the effect that it was not desirable to have Patchin at the dance because he could not keep his mouth shut; and that James made him believe there were turkeys in another field near by, and induced him to go there.    It requires some imagination to discover any particular force in this testimony to make out a conspiracy, but the objection went to the question and not merely to the answer.    As the case stood at the time, we are inclined to think the question was objectionable, without at least an assurance that the evidence sought was intended to connect James with the others.    No such assurance was given, and the effect of the ruling was to intimate that the defendant on trial might be chargeable with the conduct of an entire stranger to the plot, if there was a plot.

The respondent below was not permitted, on cross-examination, to ask Fuller whether he had not told one Gleason that he had pleaded guilty, and that he would not go to state's prison alone, or that he would have company. This refusal was erroneous. It was proper cross-examination bearing upon the disposition of Fuller, and in our judgment quite material. It could only refer to his co-defendants.

The questions in regard to James Mulvany, who was not sworn as a witness, are referred to in the other case.

Thomas Mulvany testified to some difficulties between the Hamiltons and his father, involving a law suit and a fight or squabble. The court refused to permit him to be asked whether he had become interested in those things. We think the question pertinent as bearing on his bias. For the same reason he should have been allowed to be questioned as to his statement that "if we have not got proof enough to send the Hamiltons to state's prison, we can get it."

Fuller, upon his cross-examination, was asked if he had not previously made a written statement then shown to him, and he swore he did not remember it, but admitted it had his signature. But the court refused to allow any portion of the paper to be read except a few detached sentences, and the refusal was based on the ground that it was an unwarrantable mode of assaulting private character. There was full and positive proof that the witness Fuller had dictated the contents of the statement, and it was a full and circumstantial account of the manner in which he claimed to have been led to make a statement for the prosecution, and a denial of the truth of the facts which would charge the Hamiltons.

We have had no authority produced, and can conceive no reason why this testimony should have been excluded. There is no portion of the document which is irrelevant to the subject of impeachment, and nearly the whole force of it was destroyed by allowing it to be shorn of its explanations. It was one continuous and single narrative, which,

if true, or if given, whether true or not, must have entirely destroyed the credit of the witness.   His position in the case was one calling for the severest scrutiny, and, while his statements involving other persons would be no evidence against them, it would be a very dangerous thing to hold that a witness swearing a crime upon one man could not be impeached by showing that he had made statements that the crime had been committed by another person not on trial.   The only inquiry would be whether there was a contradiction, and that may be shown without reference to its bearings elsewhere.

The party attempting to attack a witness as false, and to show his falsehood by his self-contradictions, cannot be deprived of a right essential to his own safety, by any considerations of delicacy to others which will stifle the truth. And inasmuch as the impeachment here was by a written statement signed by the witness, the practice would not permit him to be asked whether he made particular statements in it, but when identified, the writing must be put in as a whole, and must speak for itself.—*2 Phil. Ev., 963-4; Lightfoot v. People, 16 Mich. R., 507.*   Any explanations which he might be at liberty to make as to its genuineness or correctness would not remove the necessity of submitting the entire document.

The charge concerning testimony of good character was contrary to the rule laid down in *People v. Garbutt, 17 Mich. R., 26.*   Such testimony is always admissible.

The remaining questions, so far as they are likely to arise again, are sufficiently disposed of in the case of Thomas Hamilton.

The judgment must be reversed, and a new trial granted, and the plaintiff in error must be remanded to the custody of the sheriff until bailed or otherwise dealt with according to law.

COOLEY, J., and GRAVES, CH. J., concurred.

CHRISTIANCY, J., did not sit in this case.