PEOPLE *v.* VAN DAM.

1. IDENTIFICATION OF STOLEN PROPERTY—EVIDENCE.
   Articles remaining in a store after it had been burglarized are
   admissible to identify similar articles found in the possession
   of the party charged with the crime, by showing that all bear
   like evidences of shop wear or exposure.

2. STATUTORY BURGLARY—INCLOSURE NOT ADJOINING DWELLING.
   A store located upon the ground floor of a building, and hav-
   ing no indoor communication with the rooms above, which
   are occupied as a residence by a clerk of the proprietor, is not,
   as a matter of law, "adjoining to or occupied with a dwelling
   house," so as to prevent a breaking and entering thereof from
   constituting a statutory burglary.

3. CRIMINAL LAW—EVIDENCE OF GOOD CHARACTER—INSTRUCTIONS.
   An instruction limiting the effect of proof of good character
   to cases where there is an even, or nearly an even, conflict of
   evidence as to the guilt of the respondent, is erroneous.

Exceptions before judgment from superior court of
Grand Rapids; Burlingame, J.   Submitted November 21,
1895.   Decided December 17, 1895.

Zack VanDam was convicted of statutory burglary.
Reversed.

*Nathan P. Allen,* for appellant.

*Alfred Wolcott,* Prosecuting Attorney, for the people.

Long, J. The information contains two counts,—one for breaking and entering the store of Hiram G. Luce in the night-time, with intent to commit the crime of larceny, said store not adjoining to or occupied with a dwelling house; and the other for the larceny of goods of more than $25 in value. Respondent was convicted under the first count, and the case comes to this court on exceptions before sentence.

The store burglarized is situated on the corner of East street and Fifth avenue, in the city of Grand Rapids,. and is a two-story structure, consisting of two stores. A flight of stairs leads up from the street in front, and between the two stores, and a flight leads downward between the stores at the rear. Over the store rooms are fitted up, in which Norton E. Briggs, the clerk of Mr. Luce, lives with his family. There are five rooms, and they are entered from the two stairways. From the record, there seems to be no entrance from the store to these rooms, and the only means of getting from the store to the rooms is to pass out, either upon the street or into the back yard, and thence up one of the stairways.

The respondent resided some three-quarters of a mile from these stores. He was employed in a furniture factory, and had been so employed for a number of years; was a married man, having a wife and three children, and lived in his own house. The burglary was committed on the night of October 7, 1894. On the 2d of November, following, some suspicion having attached to him, a warrant was taken out and placed in the hands of detectives, who went to his house to make a search for the goods taken. Arriving there, they found the respondent was not at home, and told his wife of their desire to make the search, and were permitted to do so. The house below consisted of a front room, a dining room, kitchen, pantry, and bed room. A stairway led from the front room up stairs, where there were two rooms and a closet. The upper rooms were plastered, but contained nothing

but a work bench and carvers' tools, saws, chisels, etc.
The respondent is a carver. The officers then entered
the closet over the stairs, and found two boards that
had been sawed. Taking these off, they found many
articles stored away under the floor of the closet, and on
top of the lath and plastering of the rooms below. They
found some 30 or 35 pounds of coffee, tobacco, canned
goods, tea, cigars, pipes, and essence of peppermint.
Other tobaccos, marked "Spearhead" and "Tiger," were
found. The articles were put into two different bags.
The officers testified that, soon after discovering these
articles, the respondent came home and wanted to know
what they were doing there. They told him they were
searching for stolen goods. He told them that he had
none there, and that they could search his house. They
then told him that they had searched the house and found
the goods, and brought out the bags and showed them to
him, and told him his wife had said that he brought them
home. Respondent then asserted that two men had
rented these rooms up stairs. They told him that his
wife had said she asked him who helped him to get these
goods, and he stated to her that if he told her she would
not know who it was. The officers took the respondent in-
to custody, and, upon arriving at police headquarters,
searched him, and found in his pockets a half package
of Tiger tobacco, like that found in the closet, whereupon
he said that he had permission to get some every time
he wanted to use it. The goods found under the closet
floor were identified by Mr. Luce and Mr. Briggs as the
property of Mr. Luce, taken from the store. The officers
testified, further, that, in the search for these goods, they
found a secret staircase from the closet, which could
only be found by pulling off the boards.

1. On the trial the people offered in evidence the
articles which Luce and Briggs had identified, and also,
the half package of tobacco found upon the respondent

when arrested; also, the two bottles of peppermint essence which were left in the store. The testimony tended to show that these bottles of essence were of like character and in like condition as those found concealed at respondent's house. This was objected to and admitted, and upon this is based the first assignment of error. We think this was competent evidence. Mr. Luce testified that the peppermint essence had been in his store three or four years; that that found at respondent's house had been taken from his store. The bottles were offered in evidence for the purpose of identifying those found with respondent, and all of them appear to have been upon the shelves for a length of time, having some marks upon them, and being covered with fly-specks. We think the testimony does not bear out the statement that they were offered for the purpose of comparing the figures upon the bottles, as each bottle contained the figures "10." The court properly permitted the people to put the two bottles in evidence for the purpose of showing their general appearance.

2. It is contended that the store was adjoining to or occupied with a dwelling house. We think the testimony fails to show that fact, within the meaning of section 9134, 2 How. Stat. *People* v. *Nolan,* 22 Mich. 229.

3. The principal questions raised relate to the charge of the court. We need discuss but one, as we think the other objections are devoid of merit. The court charged the jury as follows:

"Now, there has been considerable testimony put into this case as to the good character of this young man. Every man who comes before you to be tried is presumed to have a good character, without any evidence whatever in the case; and it is for you to say how much that presumption of good character has been strengthened, if strengthened at all, by some 9 or 10 witnesses who have been put upon the stand before you. Evidence of good character is, in some cases, an important factor,—that

is, that which amounts to evidence of good character. If a man residing in a community has always borne the reputation of being a good man, and good, respectable citizens—well-known citizens whom you know to be respectable—come in and swear that he has always held a good character, and when, in regard to the offense charged, there seems to be an even, or nearly an even, conflict as to whether he is or whether he is not guilty, then that good character, put into the balance, ought to have a great deal of weight in such a case. Oftentimes it would be conclusive."

This charge was erroneous and misleading. Proof of good character is to have greater weight than suggested by this charge. It is applicable in all cases where crime is charged. It is not to be limited to cases where there is an even conflict as to whether the respondent is or is not guilty. As was said by this court in *People* v. *Jassino*, 100 Mich. 536: "Evidence of good character is admissible, not only in a case where doubt otherwise exists, but may be offered for the purpose of creating a doubt." *People* v. *Laird*, 102 Mich. 135; *People* v. *Garbutt*, 17 Mich. 9; *Hamilton* v. *People*, 29 Mich. 195.

The conviction must be set aside, and a new trial granted.

The other Justices concurred.