PEOPLE *v.* PARKER.

1. CRIMINAL LAW—RAPE — EVIDENCE — HYPOTHETICAL QUESTIONS STATUTORY ASSAULT—INFANT.

It was error, in a prosecution for statutory rape committed on a girl of ten years of age, where it had appeared that she had previously had sexual relations with another man on numerous occasions and with a young boy, to permit the prosecuting attorney to ask an expert witness whether one or two acts of intercourse by the first party would account for her condition at the time witness made a physical examination.

2. SAME—DEFENSE—MOTIVE OF PROSECUTION.

Where the defense was that the charge brought against respondent was trumped up by the second wife of the girl's father, who had been divorced from her mother, had remarried and was seeking to secure the custody of the child and avoid the payment of further alimony for her maintenance, respondent's attorney should have been permitted to examine the divorced wife relative to her alleged understanding with the father that after five years the alimony should be changed in amount.

3. EVIDENCE—REPUTATION—RAPE.

Evidence offered by respondent to show his good reputation was admissible as substantive proof of his innocence, and its effect ought not to have been restricted by the charge of the court to his conduct in sexual matters.

Error to Jackson; Parkinson, J.   Submitted April 20, 1911.   (Docket No. 128.)   Decided July 5, 1911.

James Parker was convicted of assault with intent to rape committed upon a female under sixteen years of age. Reversed.

*John F. Henigan* (*L. B. Gardner*, of counsel), for appellant.

*Nathan E. Bailey*, Prosecuting Attorney, and *M. Grove Hatch*, Assistant Prosecuting Attorney, for the people.

MOORE, J.  The above respondent was tried on an information containing three counts.  The first count charged that the respondent on the 30th day of November, 1909, in the city of Jackson, Mich., with force and arms in and upon one Dovetta Champion, a female child under the age of 16 years, to wit, of the age of 10 years, feloniously did make assault, and her, the said Dovetta Champion, then and there feloniously and unlawfully did carnally know and abuse.  The second count charged that the respondent, at the time and place above mentioned, upon the said Dovetta Champion did make an assault with intent unlawfully and carnally to know and abuse her.  The third count charged said respondent with having taken indecent liberties without committing or intending to commit the crime of rape upon the said Dovetta Champion at the time and place above mentioned.  Before the case was submitted to the jury, the third count was withdrawn, and the case was submitted to the jury upon the first and second counts.  After the jury had been out all night and had called for further instructions, the respondent was convicted upon the second count, with a recommendation of mercy to the court.  The case is brought here by writ of error.

Dovetta Champion, the complaining witness, was born in the city of Jackson, Mich., on December 26, 1899.  Her father's name is Charles Champion, and her mother's name was Anna D. A. Champion, who was, at the time of the trial, the wife of the respondent Parker.  Mr. Champion and his wife were divorced January 20, 1905.  Mr. Champion, the father of the complaining witness, immediately remarried.  Mrs. Champion, the mother of the complaining witness, was married June 7, 1905, to Edwin

Mayo, and lived with him about two years, and in March, 1908, obtained a divorce from him. During this' time, Dovetta Champion, the complaining witness, lived with her mother and Mayo. In April, 1908, Dovetta's mother married respondent, James Parker, and Dovetta and her mother and Parker, the respondent, lived together in the city of Jackson until the time of Parker's arrest, which was in March, 1910. The particular act for which the respondent was placed on trial was alleged to have occurred on or about November 30, 1909. It is the claim that in March, 1910, Dovetta had a conversation with her stepmother, Nell Champion, in which her stepmother asked her if Parker ever hurt her or whatever he did to her, and Dovetta said, "I just happened to tell her and she made me tell more," and thereafter made a complete disclosure of her relations with the respondent.

The defense was that the charge against respondent was a trumped up one made at the instigation of Mr. Champion and his second wife, for the purpose of getting the custody of the child under the order that it was expected the court would make, on the petition that had been filed by Mrs. Parker, for a further allowance of alimony, the first five years having expired, and that the motive of Champion's second wife in getting the little girl to make these charges against Parker, was to save Champion, her husband, from having to pay the $12 per month, or whatever the court might order him to pay for the support of the child.

The assignments of error may be arranged in three groups:

(1) Errors claimed in the admission and rejection of testimony.

(2) Exceptions to the charge of the court, and his refusal to give respondent's request to charge.

(3) Exceptions to the court's overruling respondent's motion for a new trial.

1. Under this head there are 27 errors assigned. The sixth assignment is based on the court's permitting the

prosecutor to put the hypothetical question to Dr. Gibson, an expert called by the prosecution, which question was as follows:

"*Q.* Assuming that there had been one or two acts of intercourse three or four years ago by a man with this little girl, would those acts account for the condition you found her in March 30th?"

To which objection and exception was duly taken. When this question was answered, the testimony of the complaining witness had shown that she had had numerous acts of intercourse with a boy and with her stepfather Mayo. We do not think this testimony should have been overlooked in framing the hypothetical question.

Complaint is made of the restriction put upon the examination of the mother of the complaining witness in relation to the understanding about the payment of alimony after the five years from the date of the decree of divorce between her and Mr. Champion. In view of the character of the defense, we think this testimony should have been permitted.

The court declined to give respondent's request as to the effect to be given to testimony tending to show good character, except as given in the general charge as follows:

"There has been given some evidence of good character on the part of respondent. That is always proper evidence for a man accused of crime to introduce, to show what his neighbors—those acquainted with him, with whom he associated—think about him in that regard, and is to be considered. Ordinarily, evidence of good character introduced by the respondent should relate to good character in respect to the thing which is charged, and in this case it would relate to his reputation as being a man of regular habits or proper habits in respect to sexual matters. It is possible perhaps for a person to be irregular in those matters or do things in that regard to which he would not gain a reputation. But still the fact a man hasn't any reputation for doing wrong in that regard is something, and should be considered by the jury in connection with all the other evidence in the case.        *        *        *

Consider that evidence as to good character with all the other evidence in the case, and if it raises a reasonable doubt as to the guilt of the accused, or if you have, after considering everything, still a reasonable doubt as to his guilt, of course, as I think I have before stated, the respondent is entitled to the benefit of that doubt where it exists, and should be acquitted."

In the case at bar there was the testimony of the complaining witness, a mere child, as to the occurrences between her and the accused, on the one side, and the denial of the accused, a man about 29 years of age, on the other side. The length of time the jury was out indicated that some of the jurors were in doubt, for a time at least, as to the guilt of respondent. The record contains the testimony of many witnesses who knew him well as to his good reputation.

In *People* v. *Garbutt*, 17 Mich., at page 26 (97 Am. Dec. 162), the following language may be found:

"Good character is an important fact with every man; and never more so than when he is put on trial charged with an offense which is rendered improbable in the last degree by a uniform course of life wholly inconsistent with any such crime. There are cases where it becomes a man's sole dependence, and yet may prove sufficient to outweigh evidence of the most positive character. The most clear and convincing cases are sometimes satisfactorily rebutted by it, and a life of unblemished integrity becomes a complete shield of protection against the most skillful web of suspicion and falsehood which conspirators have been able to weave. Good character may not only raise a doubt of guilt which would not otherwise exist, but it may bring conviction of innocence. In every criminal trial it is a fact which the defendant is at liberty to put in evidence; and, being in, the jury have a right to give it such weight as they think it entitled to. Chief Justice Shaw has pointed out in the *Webster Case* how important it is in the case of some minor offenses, and he adds that, 'even with regard to the higher crimes, testimony of good character, though of less avail, is competent evidence to the jury, and a species of evidence which the accused has a right to offer. But it behooves one charged with an atrocious crime, like this of murder, to

prove a high character, and, by strong evidence, to make it counterbalance a strong amount of proof on the part of the prosecution.' *Commonwealth* v. *Webster*, 5 Cush. [Mass.] 295 [52 Am. Dec. 711]. In some cases, it may have even this great effect."

In *People* v. *Mead*, 50 Mich. 228 (15 N. W. 95), language of a similar character was offered. See *Hamilton* v. *People*, 29 Mich. 195.

In *People* v. *Jassino*, 100 Mich. 536 (59 N. W. 230), it was said, evidence of good character is admissible, not only in a case where doubt exists, but may be offered for the purpose of creating a doubt. See *People* v. *Laird*, 102 Mich. 135 (60 N. W. 457).

The language of Justice LONG, in *People* v. *Van Dam*, 107 Mich. 425 (65 N. W. 277), is quite in point here:

"Proof of good character is to have greater weight than suggested by this charge. It is applicable in all cases where crime is charged. It is not to be limited to cases where there is an even conflict as to whether the respondent is or is not guilty."

Complaint is made of the following:

"You have the right to believe a man accused of crime when he testifies as against other sworn testimony, if you think that his testimony deserves such respect as that. It is possible for a man accused of crime to be so frank, so clear in his statements, and his manner so fair and just, that the jury will believe him."

This language should be read in connection with what precedes and follows it, and when so read we doubt if the jury was misled.

Complaint is made because the judge did not charge the jury in relation to what constituted assault and battery, and that it was included in the greater crime.

The respondent was defended by able counsel. They did not ask the judge to charge upon that subject. The respondent denied that he had committed any offense of any sort. In view of this situation and the further fact that a new trial must be granted, for the reasons before

stated, we will not express an opinion as to whether this omission was error.

3. The conclusions we have already expressed make it unnecessary to consider the assignments of error in this group.

The judgment is reversed, and a new trial ordered.

McALVAY, BROOKE, BLAIR, and STONE, JJ., concurred.