PEOPLE v. SALISBURY.

1. CRIMINAL LAW—RAPE—EVIDENCE—HUSBAND AND WIFE—ADMISSIBILITY OF STATEMENT BY WIFE—WITNESSES.

In a prosecution for attempted rape, the action of the prosecutor in calling defendant's attention to a paper containing a statement made by his wife and asking him if he did not make the admissions to her contained therein, was reversible error under 3 Comp. Laws 1915, § 12555, providing that neither spouse may testify as to any communication made by one to the other without the consent of both, since the prosecutor's action was but an attempt to get before the jury in an indirect way testimony made incompetent by the statute.

Authorities discussing the question as to whether a wife can be a witness against husband in prosecution for rape, are collated in notes in 2 L. R. A. (N. S.) 862; 22 L. R. A. (N. S.) 240; 41 L. R. A. (N. S.) 1213; L. R. A. 1917E, 1133.

As to sexual offense by one spouse with or against third person as a crime against other spouse within statute relating to competency of husband or wife as witness against other see note in 4 A. L. R. 1071.

218 Mich.—34.

2. SAME—EVIDENCE—SUFFICIENCY—QUESTION FOR JURY.
   Evidence as to defendant's guilt, *held*, sufficient to present an issue of fact for the jury.

3. SAME—TRIAL—INSTRUCTIONS—REQUESTED INSTRUCTIONS — GOOD CHARACTER.
   Modification by the court of a requested instruction as to good reputation to make it more applicable to the testimony in the case and the claims of defendant, *held*, not error.

4. SAME—WITNESSES—HUSBAND MAY NOT BE CROSS-EXAMINED AS TO COMMUNICATION TO WIFE.
   A defendant in a criminal case may not be cross-examined as to confidential communications made by him to his wife relative to the charge against him.

Exceptions before judgment from Jackson; Parkinson (James A.), J.   Submitted April 13, 1922. (Docket No. 117.)   Decided June 5, 1922.

Robert Salisbury was convicted of an assault with intent to commit rape.   Reversed.

*John F. Henigan,* for appellant.

*M. Grove Hatch,* Prosecuting Attorney, and *Arthur W. Wiggins,* Assistant Prosecuting Attorney, for the people.

SHARPE, J.   On exceptions before sentence defendant reviews his conviction of assault with intent to commit the crime of rape upon his 14-year-old daughter, Blanche.   The testimony offered by the prosecution tended to prove the commission of the crime at his home in Michigan Center, in Jackson county, on the night of July 2, 1921.   The defendant was called as a witness on his own behalf.   He was cross-examined at length, without objection, as to statements in the nature of admissions claimed to have been made by him to his wife soon thereafter, all of which he denied.   The following then occurred:

"*Q.* I want you to look at the heading of this paper. (Stepping to witness stand and showing witness a paper.) Just look at it. See what it is. You see what it is do you?

"*A.* Yes, sir.

"*Mr. Henigan:* What is it? What paper is it?

"*Mr. Hatch:* The statement of Mrs. Robert Salisbury, his wife.

"*Mr. Henigan:* I object to that, your honor, to his using the statement of Mrs. Robert Salisbury, this man's wife, here in evidence.

"*Mr. Hatch:* I am not. I am asking if he didn't say this to her. I called his attention to it, and Mr. Henigan asked me what the statement was.

"*Mr. Henigan:* And you told me.

"*Mr. Hatch:* I want to call this witness' attention to this specific—

"*The Court:* I know, but that is bringing into the case a statement made by her.

"*Mr. Hatch:* I am asking if he didn't say that to her and she didn't say that to him.

"*The Court:* If she said it to him?

"*Mr. Hatch:* Well—

"*The Court:* Yes, you are bringing her into the case, aren't you, when you try to prove anything she said?

"*Mr. Hatch:* Well, it is—I think it is admissible, your honor, if it is an admission on his part of anything on his part.

"*The Court:* You can ask him if he told her.

"*Mr. Hatch:* That is what I am asking him.

"*The Court:* You want to ask him if she didn't say to him something?

"*Mr. Hatch:* And he made a reply to it.

"*The Court:* Well, you will have to limit it in your question as to whether he said to her something.

"*Mr. Hatch:* All right. Take—

"*Mr. Henigan:* I object to the use of that statement, your honor, by the prosecutor here before the jury, because it is a well known rule she can't testify against him.

"*The Court:* That is true that she can't without his consent. Now, Mr. Hatch, you are getting onto thin ice, I am afraid. You may ask him if he admitted so and so, but if in attempting to contradict him it

would require a violation of the statute you will not be able to contradict him.

"*Mr. Hatch:* All right.

"*The Court:* You can ask him if he didn't say so and so and to his wife; for that matter, if he said it himself, it don't make any difference to whom he said it.

"*Q.* Now, I want to ask you if you didn't say to your wife on the next day after the 2d of July or within a few days of that time, 'I ain't done nothing, but I saw her lying there and I done that'?

"*A.* No, sir.

"*Q.* And wasn't that referring to an admission you had previously made to her that you had used your finger on her?

"*A.* No, sir."

1. Error is assigned on the action of the prosecuting attorney and the trial court relative thereto. Section 12555, 3 Comp. Laws 1915, so far as material to the question here presented, reads as follows:

"A husband shall not be examined as a witness for or against his wife without her consent; nor a wife for or against her husband without his consent," except in certain specified cases, "nor shall either, during the marriage or afterwards, without the consent of both, be examined as to any communication made by one to the other during the marriage." * * *

In *Sweikhart* v. *Hanrahan*, 184 Mich. 201, Mr. Justice OSTRANDER said:

"The statute evidences a rule of public policy; the privilege being the privilege of the spouse making the communication, the lips of both being sealed, unless both, otherwise, personally consent."

The exclusion of such communications when made in confidence between persons occupying the intimate relation of husband and wife is predicated on the necessity of fostering such relation and the greater injury likely to result from permitting their disclosure than the benefit to be gained thereby. Confidence and secrecy are presumed to have been intended in such

marital communications and the statute absolutely prohibits their divulgence by either of the parties as witnesses "without the consent of both."

The course pursued by the prosecuting attorney to which objection was made brought clearly before the jury the fact that defendant's wife had made a statement in writing to him, in which she had said that defendant made the admissions which he as a witness denied. Counsel could not and did not seek to call the wife as a witness. In this indirect way he placed before the jury the fact, unsworn to, that such damaging admissions had been made by the defendant to her. That prejudice resulted therefrom cannot be doubted. There was little to corroborate the testimony of the little girl except the fact that her hymen was found to have been ruptured. The physicians who examined her differed as to whether the rupture was recent. The verdict as rendered indicates that the jury were unable to find that there was such penetration as would constitute rape. For the error thus committed, the verdict must be set aside and a new trial granted.

2. Counsel strenuously insists that "there is no testimony in the case arising to the dignity of evidence to sustain the verdict." Blanche testified that she was awakened in the night and found her father beside her; that her bloomers were slipped down near her knees; that she got up and went to her mother's bed and told her about it,—

"I told her I thought my father did something to me, and she told me she thought I was dreaming. * * * I don't know whether he did or not do something with his private parts to my private parts. That is what I thought, I don't know. * * * There was something done to my private parts, but I can't tell by what it was done. * * * I felt something come out of me, and I jumped up."

She further testified that she told her mother more about it the next morning; that there was something

in her private parts that night but she could not say what it was.

The defendant testified:

"I got up about 2 or 3 o'clock in the morning to get a drink of water. In going back, I fell over the corner of this davenport. I laid there for a minute, it hurt me so, that is, I laid on the davenport, and it scared this little girl, and she got up and went in her mother's room."

This testimony clearly presented an issue of fact for the jury.

3. Several witnesses testified that defendant had a good reputation in the community in which he lived. His counsel preferred a request in relation thereto, based on our holdings in *People* v. *Garbutt*, 17 Mich. 9, 26 (97 Am. Dec. 162), and *People* v. *Parker*, 166 Mich. 587, 591. In view of what was said in the recent case of *People* v. *Best*, 218 Mich. 141, it is unnecessary to discuss this assignment. The modification of the request by the court simply made it more applicable to the testimony in the case and the claims of the defendant. We have considered the other errors assigned, but deem them without merit.

4. In view of a new trial of this case and the probability that the prosecuting attorney may again seek to cross-examine defendant as to communications made by him to his wife, we feel impelled to consider and determine whether this may be properly done. The statute, already quoted (§ 12555), provides in express terms:

"Nor shall either, during the marriage or afterwards, without the consent of both, be examined as to any communication made by one to the other during the marriage."

Its purpose, as well expressed by Mr. Justice OSTRANDER, has been stated. It absolutely prohibits the examination of either husband or wife as to such

communications *"without the consent of both."*   It is well settled in this State that when a defendant in a criminal case becomes a witness in his own behalf he may be cross-examined in the same manner as any other witness in the case.   *People* v. *Sutherland,* 104 Mich. 468.   At first blush, it might seem, as it did to the trial court, that under such rule defendant might be asked as to admissions made by him to his wife just the same as though the claimed admissions were made to another person.   But cross-examination is restricted as to other witnesses when the answers would reveal confidential communications, the divulgence of which is prohibited by statute.   A doctor may not disclose any information acquired in his professional character, revealed by the patient to enable him to prescribe or do any act as a surgeon (3 Comp. Laws 1915, § 12550). Certain witnesses may not testify as to matters equally within the knowledge of deceased persons (§ 12553). No minister of the gospel or priest is permitted to disclose any confession made to him professionally (§ 12549).   Nor under the rules of evidence may an attorney testify as to confidential communications made to him by his client except when made for an unlawful purpose.   *Alderman* v. *People,* 4 Mich. 414 (69 Am. Dec. 321) ; *Hamilton* v. *People,* 29 Mich. 173; *Passmore* v. *Passmore's Estate,* 50 Mich. 626 (45 Am. Rep. 62) ; *People* v. *Van Alstine,* 57 Mich. 69.

There is no question but that the wife of defendant could not be asked to disclose such communications. May he on cross-examination be required to do so? The statute says that neither the husband nor wife shall be examined as to them *without the consent of both.*   As the wife is not a competent witness, and not a party, her consent cannot be secured.   Aside from this, however, we do not think that defendant could be interrogated as to statements made by him to his wife where her lips as to them are sealed by

the statute. The effect of permitting such a course to be pursued cannot but be apparent to any person familiar with the trials of criminal cases. Propounding the question, even if answered in the negative, cannot but leave an impression on the minds of at least some of the jury that the wife, if permitted, would testify that the statement was made to her. The statute prohibits such disclosures on the part of the wife and in our opinion must be held to equally prohibit questioning the husband concerning them.

Much has been said and written on the subject of such privileged communications, but we find little directly bearing on the question here presented.

In *Murphy* v. *Commonwealth*, 23 Grat. (Va.) 960, the third paragraph of the syllabus reads:

"On a trial for an assault with intent to kill, the witness upon whom the assault was alleged to have been made, was asked if he did not tell his wife that the prisoner acted only in his own defence. The answer to the question may tend to criminate himself, and the testimony is inadmissible. 2d. It required him to state a communication supposed to have been made by him to his wife; which, if made, was a confidential communication, and which he was not bound to disclose."

In *Cornell* v. *Vanartsdalen*, 4 Pa. St. 364, 374, it is said:

"The rule is the same, in its spirit and extent, as that which excludes confidential communications made by a client to his attorney."

Mr. Greenleaf, in his work on Evidence (Vol. 1, 16th Ed.), § 333*e*, says that the principle on which the disclosure of such communications is prohibited—

"rests on a public policy similar to that which protects confidential communications between attorney and client, * * * the thought being that the full activity and benefit of the relation cannot be attained unless the persons in it have full security in advance that their confidences cannot be disclosed."

The rule as to attorney and client seems well established. A client cannot be interrogated as to matters concerning which the attorney is prohibited from testifying. On this the text-book writers seem agreed.

"The privilege being for the protection of the client in his subjective freedom of consultation (*ante*, §§ 2291, 2321), it would plainly be defeated if the disclosure of the confidences, though not compellable from the attorney, was still obtainable from the *client*. Accordingly, under the modern theory, it has never been doubted that the client's own testimony is equally privileged." 4 Wigmore on Evidence, § 2324.

"The privilege is that of the client and it follows that where an attorney cannot, because of his professional employment, disclose a communication made to him by his client, the latter cannot be compelled to testify in regard thereto. Therefore, a statute, forbidding disclosure of such communications by an attorney, will not be construed as permitting of compulsory testimony from the client in regard to communication of this character. Otherwise the statute would be practically inoperative." 5 Chamberlayne, The Modern Law of Evidence, § 3679.

"The client does not waive this privilege merely by calling the attorney as a witness, unless he also examines him in chief to the matter privileged; nor by taking the stand himself on his own behalf. The privilege is that of the client, being intended to promote freedom of consultation for those needing legal advice; hence, the client is equally protected from disclosing the communication; and the attorney's willingness to disclose is immaterial." 1 Greenleaf on Evidence (16th Ed.), § 243.

Such decisions as we have been able to find are in harmony with the rule as stated.

In *Birmingham Railway & Electric Co.* v. *Wildman*, 119 Ala. 547, 551 (24 South. 548), it was said:

"For the purpose of attacking the *bona fides* of plaintiff's claim, and showing that, from motives of self-interest, he had purposely withheld from the de-

fendant all knowledge of and information concerning the accident, defendant's attorney propounded the following questions to plaintiff on cross-examination: 'Did you ask them (your lawyers) to come and see the railroad company about it?' 'Didn't you tell them (your lawyers) to go and present the matter to the railroad company, and ask them to pay you damages?' 'Did you tell them not to sue at once, but to wait a while?' To each of these questions an objection was sustained. The inquiries were not only immaterial and irrelevant, but they also directly called for a disclosure by a client of confidential communications to his attorney. While a party who offers himself as a witness cannot refuse to answer pertinent questions on the ground that he had communicated to his attorney the matters inquired about, yet he cannot be compelled to state whether or not he had communicated certain facts to his attorney, or given him certain instructions. As stated by Mr. Wharton:

" 'It is obvious that the guard against the disclosure of such communications by counsel would be a mockery if the client could be compelled to disclose that as to which counsel's lips are sealed. It would be absurd to protect by solemn sanction professional communications, when the lawyer is examined, and to leave them unprotected at the examination of the client.' 1 Wharton on Evidence, § 583.

"*Montgomery* v. *Pickering,* 116 Mass. 227; *Hemenway* v. *Smith,* 28 Vt. 701; *Bigler* v. *Reyher,* 43 Ind. 112."

In *Hemenway* v. *Smith,* 28 Vt. 701, the syllabus reads:

"A party is not obliged, as a witness, to disclose any consultation he may have had with his counsel in relation to the cause. He is equally protected, with his counsel, from testifying respecting confidential communications between them."

In *State* v. *White,* 19 Kan. 445 (27 Am. Rep. 137), the syllabus reads:

"1. Privileged Communications; Client and Attorney; Privilege of Party, as a Witness. A defendant

charged with the crime of bigamy, being on the trial and testifying in his own behalf, was required by the court to answer on cross-examination whether he had not been consulted or advised by his counsel in regard to obtaining a copy of a decree of divorce alleged to have been granted prior to the second marriage, against the objection of such defendant that the communications between himself and his attorneys were privileged. *Held,* That the court erred, as the defendant had not referred to any consultation or advice in connection with his attorneys in his direct examination, and that the communications were privileged. Any communication which an attorney is precluded by statute from disclosing, his client cannot be compelled to disclose against his objection of privilege."

The authorities cited in each of the above cases will be found instructive. On principle as well as authority, we feel constrained to hold that a defendant in a criminal case may not be cross-examined as to confidential communications made by him to his wife relative to the charge against him. See *People* v. *Toner,* 217 Mich. 640.

The conviction is set aside and the cause remanded to the circuit court for a new trial.

FELLOWS, C. J., and WIEST, McDONALD, CLARK, BIRD, MOORE, and STEERE, JJ., concurred.