PEOPLE *v.* SCHULTZ.

1. CRIMINAL LAW—RECEIVING STOLEN GOODS—CHARACTER—REPUTA-
TION—EVIDENCE.

In a prosecution for receiving stolen goods exceeding $50 in
value, knowing the same to have been stolen, the testimony of
a witness as to the defendant's honesty or truthfulness and
veracity based solely on personal knowledge, when the witness
had never talked with anybody regarding the defendant, is
not proof as to reputation for truth and veracity or honesty
(Act No. 328, § 535, Pub. Acts 1931, as amended by Act
No. 11, Pub. Acts 1941).

2. SAME—RECEIVING STOLEN GOODS—INSTRUCTIONS—CHARACTER.

In prosecution for receiving stolen goods wherein defendant
produced one witness who testified as to defendant's reputa-
tion for truth and veracity and one who gave his personal
opinion as to such reputation, it was not error to refuse to
give charge in language requested that defendant had produced
witnesses who testified to his good character and good repu-
tation for truth and veracity, honesty and integrity, especially
where charge as given stated that both witnesses testified he
had good character (Act No. 328, § 535, Pub. Acts 1931, as
amended by Act No. 11, Pub. Acts 1941).

3. SAME—INSTRUCTIONS—CHARACTER.

In charging the jury in a prosecution for crime where character
testimony has been presented by defendant, the court should
state that the jury should consider the testimony as a whole,
including the character testimony, in determining whether the
testimony in its entirety is sufficient to create a reasonable
doubt as to the guilt of the defendant.

4. SAME—INSTRUCTIONS—CHARACTER—EVIDENCE.

Instruction as to character testimony of defendant in prosecution
for receiving stolen goods, which was more favorable than de-
fendant was entitled to in that the court stated witnesses had

testified as to his reputation for honesty and integrity whereas not even one witness had so testified although one had testified as to his reputation as a peaceful, law-abiding citizen and as to his reputation for truth and veracity was not prejudicial even though included therein was a charge that if the proof of guilt were clear and convincing jury had duty of convicting him notwithstanding there was proof of his good character (Act No. 328, § 535, Pub. Acts 1931, as amended by Act No. 11, Pub. Acts 1941).

5. RECEIVING STOLEN GOODS—VALUE—EVIDENCE.

In prosecution for receiving stolen goods exceeding $50 in value, knowing the same to have been stolen, evidence as to value was sufficient to permit jury to find value of such property in excess of $50 (Act No. 328, § 535, Pub. Acts 1931, as amended by Act No. 11, Pub. Acts 1941).

6. SAME—VALUE—INSTRUCTIONS.

In prosecution for receiving stolen goods exceeding $50 in value, knowing the same to have been stolen, question of value *held*, to have been submitted to jury with appropriate instructions (Act No. 328, § 535, Pub. Acts 1931, as amended by Act No. 11, Pub. Acts 1941).

7. CRIMINAL LAW—INDORSEMENT OF NAMES ON INFORMATION—RES GESTAE WITNESSES.

Denial of defendant's motion to indorse on information the name of person who introduced the State's witness to defendant, charged with receiving stolen goods, *held*, proper, where defendant admitted, and the court held, such witness was not a *res gestae* witness (Act No. 328, § 535, Pub. Acts 1931, as amended by Act No. 11, Pub. Acts 1941).

Appeal from Recorders Court for the City of Detroit; Gillis (Joseph A.), J.    Submitted October 17, 1946.    (Docket No. 75, Calendar No. 43,049.) Decided December 2, 1946.

Leonard Schultz was convicted of receiving stolen goods.    Affirmed.

*Charles Bowles* (*Hugh V. Williams,* of counsel), for appellant.

*Foss O. Eldred,* Attorney General, *Edmund E. Shepherd,* Solicitor General, *Gerald K. O'Brien,* Prosecuting Attorney and *Andrew DeMaggio,* Assistant Prosecuting Attorney, for the people.

BOYLES, J.   The defendant, on leave granted, appeals from a sentence upon conviction by a jury in the recorder's court of Detroit for receiving stolen goods exceeding $50 in value, knowing the same to have been stolen, under section 535 of the Michigan penal code, Act No. 328, Pub. Acts 1931 (Comp. Laws Supp. 1940, § 17115–535, Stat. Ann. § 28.803), as amended by Act No. 11, Pub. Acts 1941.   (The 1941 amendment [Comp. Laws Supp. 1945, § 17115–535, Stat. Ann. 1946 Cum. Supp. § 28.803], referring to third conviction, has no bearing on the case.)   The first and only important question urged for reversal is as follows:

"Did the court err in charging the jury with reference to the use and value of character evidence?"

After the defendant had testified in his own behalf the defendant produced two so-called character witnesses.   We quote their testimony on that subject matter in full.   One Jacob Rassner testified on his direct examination as follows:

"I have never talked to anybody regarding the defendant.

"*Q.*   You wouldn't know anything about his reputation for truth and veracity?

"*A.*   Well, so far whenever he comes in I give him goods and think a lot of him; otherwise I wouldn't give him any goods.

"*Q.*   Did you ever know of any dishonest act on his part?

"*A.*   Not yet.   I consider him to be honest and trustworthy.

"*Q*.   And what is your opinion as to his reputation for truth and veracity?

"*Q*.   As far as you know, his reputation is good?

"*A*.   OK with me.'

On cross-examination he testified as follows:

"My contacts with Mr. Schultz are just business connections.  I don't associate with him socially.

"*Q*.   Did you ask anybody about Mr. Schultz?

"*A*.   No.  Somebody recommended him to me a couple years ago and I found him OK.

"*Q*.   He always paid his bills to you?

"*A*.   Paid his bills and paid his notes.

"*Q*.   And you are basing your opinion on that?

"*A*.   On that and on that basis I—I place my opinion that he is all right; because if he wouldn't be I wouldn't give him any goods, for sometimes he takes out a diamond amount to as high as $1,500, $200, a stone, because I carry the biggest line in the city."

It is apparent from the foregoing that an attempt was made to obtain testimony from this witness (1) as to the defendant's reputation for truth and veracity, and (2) as to honesty.  In both particulars the testimony falls short of what the defendant claims for it.  The opinion of a witness as to the defendant's honesty or truthfulness and veracity based solely on personal knowledge, when the witness had never talked with anybody regarding the defendant, is not proof as to reputation for truth and veracity or honesty. *People* v. *Albers,* 137 Mich. 678; *People* v. *Nemer,* 218 Mich. 163; *People* v. *Bartlett,* 312 Mich. 648, 662.  The testimony adduced by the above witness does not support defendant's claim that the court erred in charging the jury as to the use and value of such character testimony.  Such testimony, above quoted, cannot be said to rise to the dignity of character testimony.

One James Hords, the other character witness produced by the defendant, testified as follows:.

"I have known the defendant, Leonard Schultz, about three years and have done business with him over that period of time.

"*Q.* Where did you meet him?

"*A.* I first met Mr. Schultz—I had a diamond brooch to sell and I was introduced to him through a third party, and that is the first time I met him; that is about three years ago. I have sold him merchandise since then, a few smaller pieces.

"I have talked to other business men about him.

"*Q.* Associates of his?

"*A.* Not associates of his but neighbors who I do business with myself, druggists and doctors in his immediate vicinity. By talking to them I know his reputation as a peaceful and law-abiding citizen.

"*Q.* What is his reputation?

"*A.* Well, he holds a very fine reputation. They all think highly of him, and as a matter of fact, I have had Mr. Schultz—

"*The Court:* Wait just a minute. I don't like to restrict this but, Mr. Prosecutor, you know the answers. They can't go into details. Do you know his reputation?

"*A.* Yes.

"*The Court:* Is it good or bad?

"*A.* Good.

"*Q.* And do you know his reputation for truth and veracity in the community in which he lives?

"*A.* I only heard good things said about him.

"*Q.* Did you ever hear anything bad about him?

"*A.* No."

While the questions asked this witness were not appropriate to prove reputation, the witness did testify that defendant's reputation for truth and veracity was good. Neither he nor anyone else testified as to the defendant's reputation for honesty. This was the only testimony on which the defendant

could base a request made by the defendant that the court charge the jury as follows (italics supplied) :

"The defendant in this case has produced *witnesses* who testified to his good character and good reputation for truth and veracity, *honesty and integrity,* and for being a quiet, peaceable and law-abiding citizen. Such evidence is often times sufficient to outweigh testimony of the greatest weight, for one of good character is less likely to commit an offense, than one held in less repute. *Witnesses* to the character of the defendant, who have never heard anything against his reputation for truth and veracity, *honesty and integrity,* and for being a quiet, peaceable and law-abiding citizen, are competent, for where nothing bad is said of one's general reputation for truth, veracity, *honesty and integrity,* and for being a peaceable, quiet and law-abiding citizen, then one's reputation in that regard is presumed to be good.

"The weight you will give the testimony touching on his good character is something which you must determine from all of the evidence in the case, and you have a right to bear in mind the type and character of *witnesses* who have testified as to the defendant's good character and reputation. In this connection you have a right to bear in mind the station in life and positions of responsibility held by these *witnesses* in the community, as touching upon *their* credibility and the value and weight you are to give to *their* testimony in considering the question of defendant's good character."

The request in the above language was plainly improper. It would have been untruthful and misleading. No *witnesses* had testified as to the defendant's good character and good reputation for truth and veracity, and there was no testimony whatever as to the defendant's reputation for honesty and integrity. The court did not err in refusing to give

the charge in the language requested. In a charge, otherwise careful and complete as to the claims of the people and the defendant, the law applicable to the case, and the duties and responsibilities of the jurors, the court charged the jury as follows:

·"Now, there has been some testimony, members of the jury, as to the character of the respondent. When a person is charged with a crime or any other act involving moral turpitude, which is endeavored to be fastened on him by circumstantial evidence, or, by testimony of doubtful witnesses, he may introduce proof of his former good character, for honesty and integrity, to rebut the presumption of guilt arising from such evidence, which it may be impossible for him to contradict or explain; but, if the case is not doubtful, if the testimony carries conviction of the truth of guilt beyond a reasonable doubt to the minds of the jury, if it becomes evidence convincing and satisfying the minds and the consciences of the jury of the truth of the guilt of the accused beyond a reasonable doubt, then character, however grand and noble in the past, must give way to the inevitable results of crime, for crime is a maelstrom which washes out and makes blank the past history, burying it in oblivion. However good a man's character may have been in the past, if the proof is clear and convincing of his guilt, it would be the duty of the jury to say so. Good character helps where the proof is doubtful or uncertain, or, when there is reasonable doubt of the guilt of the party; but when this does not exist, it becomes the solemn duty of the jury to say, if they believe it, the word 'guilty.'

"In weighing the testimony as to character, members of the jury, you have a right to bear in mind the type of witnesses who testified as to the defendant's good character. I think he had two character witnesses, is that right? Were there two character witnesses?

"*Mr. Bowles:* Yes, your Honor.

"*The Court:* That is what I have here; the old gentleman, the wholesale dealer in diamonds, who had business dealings with him during the last two or three years; and the other man who had some business connection with him in selling some jewelry. *Both testified he had good character.*"

In view of the record, this charge was more favorable to the defendant than he had a right to expect.

In the above-quoted instruction given by the trial judge two paragraphs were taken verbatim from a charge which was approved in *People* v. *Mead,* 50 Mich. 228, 232, 233. While the *Mead Case* has not been expressly overruled by the Court, that part of the charge in the *Mead Case* which was quoted by the trial judge in the instant case has been considered in many subsequent decisions of this Court.

"Error is assigned on a portion of the charge relating to the proof of good character, which is as follows:

" 'Now, the good character of this respondent has been put in question. A man's good character is a valuable thing under all circumstances, and it is proper evidence to be considered by a jury in doubtful cases to determine whether or not a man having that good character would commit such an offense. It often avails, and should avail, to acquit a man under such circumstances; but when there is positive proof of the commission of an offense, then good character cannot avail to overthrow that proof.' * * *

"We think the charge as given by the court on its own motion is erroneous. By the instruction above quoted the respondent was denied the benefit of proof of good character if the jury should find positive evidence tending to show the commission of the offense. Evidence of good character is admissible not only in a case where doubt otherwise exists, but may be offered for the purpose of creating a doubt.

See People v. Garbutt, 17 Mich. 9 (97 Am. Dec. 162), and Hamilton v. People, 29 Mich. 195." People v. Jassino (1894), 100 Mich. 536, 537.

"The conviction must, however, be set aside for other reasons. Several witnesses were called as to the previous good character of the respondent, and the people called no witnesses upon that subject. The court instructed the jury that—

" 'Good character is always admissible, gentlemen, in criminal cases, and may be always received by you, *but it is for you to say whether it will have any weight with you in coming to your verdict, or not.* The testimony of the defense may be introduced to show what the character of the defendant is; and if the testimony is incompatible with your judgment in regard to defendant's good character, if you think it is insufficient, *or if you think defendant is guilty without any testimony with reference to character,* it would be your duty to say so. The defendant might have a good character up to a certain time, and afterwards he might have committed a crime.

" 'If a crime was absolutely committed, and you are satisfied beyond a reasonable doubt, *then good character would be comparatively useless,* so far as you are concerned, because men sometimes have to have some commencement in crime, and a man might have a good reputation and good character most all of his life, and he may commit some crime; and it does not follow, because he has always had a good reputation, that, therefore, he is a good man. It is a question for you to say whether, *if there is any doubt in regard to the case,* whether you believe that testimony, or *whether you will accept testimony to show that his character is good, when you have positive evidence that his character is not good,* and that is a question for you to say entirely.

" 'In regard to the man's reputation, you have heard the testimony introduced here of some of the witnesses that defendant had borne a good char-

acter up to the time of this offense; and it is a question for you to consider whether a man who has lived a good life and enjoyed a high reputation for 35 or 40 years,—whether he would be likely to commit the offense charged. If you believe he would, then, of course, character would be of no importance. If you believe that he did commit the offense, *and you find that there is positive evidence that he did commit it, of course you would pay no attention to the man's reputation.*'

''This instruction was erroneous, in that it authorized the jury to disassociate the testimony as to good character from the other testimony in the case. The sole question was as to respondent's presence at the scene of the burglary. The evidence upon that question was conflicting. There was positive evidence that respondent was present, but there was also testimony, equally as positive, that he was not. The testimony as to good character supplemented the latter class of testimony, and was entitled to consideration in determining the disputed question. The court might as well have said:

'' 'If you find positive evidence that respondent was present, then you may reject the testimony which tends to show that he was not.'

''The precise question was before this court in *People* v. *Jassino,* 100 Mich. 536.'' *People* v. *Laird,* 102 Mich. 135, 141, 142.

''The principal questions raised relate to the charge of the court. We need discuss but one, as we think the other objections are devoid of merit. The court charged the jury as follows:

'' 'Now, there has been considerable testimony put into this case as to the good character of this young man. Every man who comes before you to be tried is presumed to have a good character, without any evidence whatever in the case; and it is for you to say how much that presumption of good character has been strengthened, if strengthened at all, by some 9 or 10 witnesses who have been put upon the

stand before you. Evidence of good character is, in
some cases, an important factor,—that is, that which
amounts to evidence of good character. If a man
residing in a community has always borne the repu-
tation of being a good man, and good, respectable
citizens—well-known citizens whom you know to be
respectable—come in and swear that he has always
held a good character, and when, in regard to the
offense charged, there seems to be an even, or nearly
an even, conflict as to whether he is or whether he
is not guilty, then that good character, put into the
balance, ought to have a great deal of weight in such
a case. Oftentimes it would be conclusive.'

"This charge was erroneous and misleading.
Proof of good character is to have greater weight
than suggested by this charge. It is applicable in
all cases where crime is charged. It is not to be
limited to cases where there is an even conflict as
to whether the respondent is or is not guilty. As was
said by this Court in *People* v. *Jassino,* 100 Mich.
536: 'Evidence of good character is admissible, not
only in a case where doubt otherwise exists, but may
be offered for the purpose of creating a doubt.'
*People* v. *Laird,* 102 Mich. 135; *People* v. *Garbutt,*
17 Mich. 9 (97 Am. Dec. 162); *Hamilton* v. *People,*
29 Mich. 195." *People* v. *Van Dam,* 107 Mich. 425,
428, 429.

"Respondent introduced evidence of his good
character, upon which subject the court advised the
jury, wrongfully, it is claimed, as follows:
" 'In this matter the respondent placed in evi-
dence his good character. Now, a man's character
is a valuable asset under all circumstances; and is
proper evidence to be considered in doubtful cases
to determine whether or not a man having that good
character would commit such an offense. It often
avails, and should avail, to acquit a man under such
circumstances; but that when there is positive proof
of the commission of an offense, the good character

cannot avail to overthrow that proof. That means just what it says.' *  *  *

"Respondent preferred no request to charge upon the subject of the effect to be given to the testimony of character witnesses. Nor after the charge was delivered was the attention of the court attracted to the necessity for saying more than· had been said upon the subject. The charge is like the one commented on in *People* v. *Jassino,* 100 Mich. 536. It was said (page 537):

" 'By the instruction above quoted the respondent was denied the benefit of proof of good character if the jury should find positive evidence tending to show the commission of the offense. Evidence of good character is admissible, not only in a case where doubt otherwise exists, but may be offered for the purpose of creating a doubt.' *  *  *

"This case and *People.* v. *Jassino, supra,* cannot be distinguished. See, also, *People* v. *Laird,* 102 Mich. 135, and note; *People* v. *Van Dam,* 107 Mich. 425; *People* v. *Parker,* 166 Mich. 587; *People* v. *Wilson,* 170 Mich. 669 (41 L. R. A. [N. S.] 216).

"It follows that the conviction must be set aside, and a new trial granted." *People* v. *Humphrey,* 194 Mich. 10, 12, 16, 17.

"On the trial a number of witnesses were sworn on behalf of respondent to show his good reputation in the community in which he lived. With reference to good character the court charged the jury as follows:

" 'In doubtful cases, good character has been used, or in circumstantial cases, to surround and assist and aid a man.'

"The limitation by the court of evidence of good character to doubtful and circumstantial cases is an improper limitation, as good character is a proper element to be considered by the jury in every criminal case where an attempt is made to show good

character. As was early said in the case of *People*
v. *Garbutt*, 17 Mich. 9 (97 Am. Dec. 162), by Chief
Justice Cooley:

" 'Good character may not only raise a doubt of
guilt which would not otherwise exist, but it may
bring conviction of innocence. In every criminal
trial it is a fact which the defendant is at liberty to
put in evidence; and, being in, the jury have a right
to give it such weight as they think it entitled to.'

"See, also, *People* v. *Laird*, 102 Mich. 135, and
footnote, where the Michigan cases on this subject
are reviewed; also *People* v. *Wilson*, 170 Mich. 669
(41 L. R. A. [N. S.] 216). We think that this fail-
ure to clearly instruct the jury upon this question
was error prejudicial to the defendant, and for this
reason alone the case should be reversed." *People*
v. *McKeighan*, 205 Mich. 367, 373, 374.

Some later opinions of this Court have modified as
well as added to the conclusions reached in the fore-
going decisions which followed the *Mead Case*, de-
cided in 1883. The principles announced in the
*Jassino Case* in 1894, down through the *McKeighan*
*Case* decided in 1919, have not been strictly followed
in later cases.

We have examined the record in *People* v. *Best*,
218 Mich. 141, decided in 1922. It discloses that the
court charged the jury in regard to the value of
good character testimony in the same language used
by the trial judge in the case at bar, namely, the
two paragraphs taken verbatim from the *Mead Case*.
No other or further charge as to the value or im-
portance of character testimony was given. Hold-
ing that this was not reversible error the Court said:

"Complaint is made of the instruction respecting
good character, citing *People* v. *Jassino*, 100 Mich.
536; *People* v. *Van Dam*, 107 Mich. 425; *People* v.
*Parker*, 166 Mich. 587; *People* v. *McKeighan*, 205
Mich. 367; *People* v. *Humphrey*, 194 Mich. 10.

"The charge on the subject was taken verbatim from *People* v. *Mead,* 50 Mich. 228—opinion by Justice COOLEY—and includes the last two paragraphs there quoted.

"Justice COOLEY said that by such charge the right to the benefit of good reputation was not denied, and the jury were told that if the evidence was convincing beyond a reasonable doubt it was their duty to convict notwithstanding the good reputation.

"The author of a note, 10 A. L. R. 108, classes the *Mead Case* among 'those by which the jury are directed to render verdict against the defendant notwithstanding his good character if upon a consideration of the whole evidence, including that element, they are satisfied beyond a reasonable doubt that he is guilty,' and he states that instructions of such tenor have been generally sustained.

"While the language approved by Justice COOLEY in the *Mead Case* was not as fortunate as that used by him in *People* v. *Garbutt,* 17 Mich. 9 (97 Am. Dec. 162), we think the *Mead Case* should not be classed with those cases in which the jury were told that defendant's good character was of no avail to him, if the evidence, apart from that element, satisfied the jury beyond a reasonable doubt of his guilt, nor with those cases where the jury were told that good character was an element to be considered only in doubtful cases, in which classes fall the cases cited by counsel. And the instructions quoted in the *Mead Case* were held in *People* v. *Parker, supra,* to be 'of similar character' to those in the *Garbutt Case,* relied upon by counsel for defendant.

"In the case at bar the trial judge gave the two important paragraphs of the *Mead Case,* not one, or one with modifications as was done in some other cases. We do not commend the charge in the *Mead Case,* but we decline now, as we did then, to say that it is reversible error. For criticism of the *Mead Case* see 10 A. L. R. 59.

"Writers in some instances have treated good character with much rhetorical flourish. An instruc-

tion employing such language might be criticized as giving undue emphasis to the subject. For a request which was approved by this Court see *Campbell* v. *People*, 34 Mich. 351, and see *People* v. *Garbutt, supra; People* v. *McArron,* 121 Mich. 1; *People* v. *Covelesky,* 217 Mich. 90; and for review of Michigan cases upon this subject see 10 A. L. R. 58.'' *People* v. *Best,* 218 Mich. 141, 147, 148.

We have also examined the record in *People* v. *Salisbury* (1922), 218 Mich. 529. It discloses, however, that the trial court did not charge the jury in the language of the *Mead Case.* The charge as to the importance and value of character testimony was:

''Now, in this case witnesses have been sworn and given testimony as to the previous good character of the respondent. A respondent on trial for a crime has a right to do that, and that has been done. He had introduced evidence of his previous good reputation in the community where he lived, and as to that I charge you that good character is an important fact with every man and never more so than when he is put on trial charged with an offense which is rendered improbable in the least degree by a course of life wholly inconsistent with any such crime.

''Now, whether it is rendered improbable here or not is for you, not for me or the law; you must determine that.

''There are cases—I am not saying this is one of them or it is not; it is for you to say whether it is or not—there are cases where it becomes a man's sole dependence and yet may prove sufficient to outweigh evidence of the most positive character. The most clear and convincing cases are sometimes—and whether this is one of them or not is for you to say—are sometimes satisfactorily rebutted by it, and a life of unblemished integrity becomes a complete shield of protec-

tion against the most skillful web of suspicion and falsehood which conspirators have been able to weave. It is for you to say whether any conspirators here have been weaving any web. I am giving you the rule of law.

"Good character may not only raise a doubt of guilt which would not otherwise exist, but it may bring conviction of innocence. In every criminal trial it is a fact which the defendant is at liberty to put in evidence, and being in, the jury have a right to give it such weight as they deem it entitled to. So you are the judges of what that testimony of good character is worth. It is for you to determine, but if, after considering and weighing all the evidences on both sides, including that as to good character, the jury is convinced of guilt, it, the jury, should say so, as even good character if clearly shown, is no defense to one who is really guilty."

This charge was approved by this Court, as follows:

"Several witnesses testified that defendant had a good reputation in the community in which he lived. His counsel preferred a request in relation thereto, based on our holdings in *People* v. *Garbutt,* 17 Mich. 9, 26 (97 Am. Dec. 162), and *People* v. *Parker,* 166 Mich. 587, 591. In view of what was said in the recent case of *People* v. *Best,* 218 Mich. 141, it is unnecessary to discuss this assignment. The modification of the request by the court simply made it more applicable to the testimony in the case and the claims of the defendant." *People* v. *Salisbury,* 218 Mich. 529, 534.

The record in *People* v. *Ferrise* (1922), 219 Mich. 471, discloses that the court charged the jury as follows:

"There have been certain witnesses who have appeared here upon the stand who are known in the law as character witnesses; that is, witnesses

who have testified as to the defendant's reputation for truth and veracity, morality and decency, and so on, in the community in which he lives; in other words, his good reputation. The purpose of this testimony is to enable you gentlemen to better judge how great credibility to attach to the defendant's testimony. In considering this testimony you should take into consideration the means these witnesses have had of knowing the defendant's reputation; the kind of persons the witnesses are, their reasons for testifying, as well as their general demeanor upon the stand. Sometimes a man's reputation for good character may be his only defense, and may of itself raise a doubt of his guilt. If such a doubt has been raised in your minds in this case, you should give the defendant the benefit of that doubt and acquit him. Good character is an important fact with every man and never more so than when he is put on trial charged with an offense which is rendered improbable in the last degree by a uniform course of life wholly inconsistent with any such crime. There are cases where it becomes a man's sole dependence and yet may prove sufficient to outweigh evidence of the most positive character. Evidence of good character is admissible, and should be considered and weighed by the jury, not only in a case where doubt otherwise exists, but may be offered for the purpose of creating a doubt. I therefore charge you that if the evidence of good character of the respondent in this case raises in your minds a reasonable doubt of the guilt of the respondent, it would be your duty to acquit him. On the other hand, I charge you that however good this defendant's reputation may have been in the past, it the proof in this case, after considering the testimony as to good reputation for truth and veracity, and so forth, as I have enumerated them to you, convinces you of his guilt, it is your duty to find him guilty of the charge here made against him. However good a man's reputation may have been in the past, if the proof of his

guilt is clear and convincing, it is the duty of the jury to convict, for crime wipes out the past, however good.''

This charge was approved by the Court as follows (p. 476):

''Error is assigned on the portion of the charge relating to good character. The instruction is sustained by the holding in *People* v. *Best,* 218 Mich. 141, and cases there cited.''

The charges in the *Salisbury* and *Ferrise Cases, supra,* seem to have avoided the pitfalls which were the cause for reversal in the *Jassino, Laird* and *Humphrey Cases, supra.* But we feel that in charging the jury the court should state in such cases that the jury should consider the testimony as a whole, including the character testimony, in determining whether the testimony *in its entirety* is sufficient to create a reasonable doubt in the minds of the jurors as to the guilt of the defendant.

In the case at bar, the meagerness of the character testimony, confined to one witness only, tends toward a reluctance to reverse on the sole ground of error in charging the jury as to the importance and effect of character testimony. Furthermore, in the instant case the trial court, in addition to charging the jury in the language of the *Mead Case,* also instructed the jury that *"witnesses* to the character of the defendant'' had testified to his reputation for ''honesty and integrity.'' No witness had testified as to reputation for *honesty* and *integrity,* and only one witness had testified as to defendant's reputation as ''a peaceful'' law-abiding citizen. As we have said, in that regard the charge was more favorable to the defendant than he had a right to expect, in view of the record. Under the circumstances of the case we

conclude that the defendant has not been prejudiced by the instructions given to the jury on the question of the value of good character testimony.

Two other grounds are urged for reversal. Appellant insists that the verdict as to the value of the property is "contrary to the great weight of the evidence" and contrary to law. There was ample testimony on which the jury might find the value of the property received by the defendant to be in excess of $50. The question of value was submitted to the jury with appropriate instructions in that regard. The jurors are the sole judges of the credibility of the witnesses. We find no error in charging the jury as to its duties in considering the issues of fact as to the value of the property.

The defendant finally urges that the court erred in denying defendant's motion to indorse the name of one Irving Goldfarb as a witness for the people. During the trial it was developed during the testimony of one Steve Lekas, one of the men who had stolen the property, that he had been introduced to the defendant by one Irving Goldfarb about a week before Lekas brought the property in question to the defendant. At the time the motion to indorse was made, counsel for the defendant admitted that Goldfarb was not a *res gestae* witness, and the court so held. The motion to indorse was properly denied. *People* v. *Hoffman*, 154 Mich. 145; *People* v. *Hawthorne*, 293 Mich. 15.

The conviction and sentence is affirmed.

BUTZEL, C. J., and CARR, BUSHNELL, SHARPE, REID, and NORTH, JJ., concurred. DETHMERS, J., did not sit.